United States Court of Appeals,

Fifth Circuit.

No. 91–1843.

Alma Faye RUSSELL, Plaintiff–Appellant,

v.

BOARD OF TRUSTEES OF THE FIREMEN, POLICEMEN AND FIRE ALARM OPERATORS' PENSION FUND OF DALLAS, TEXAS, and City of Dallas, Defendants–Appellees.

Aug. 14, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD and DEMOSS, Circuit Judges, and LITTLE,[1] District Judge.

LITTLE, District Judge:

The widow of a deceased Dallas, Texas fireman seeks to have her terminated pension benefits restored. Thwarted in that endeavor by the district court's granting of summary judgments in favor of the trustees of the pension plan and the City of Dallas, the widow has appealed to this court. Finding no infirmity in the District Court's opinions, we AFFIRM the decisions for the following reasons.

I. FACTS

The facts of consequence are not in dispute. In 1976, Robert G. Russell retired from the Dallas, Texas Fire Department. Russell's years of service afforded him retirement benefits as provided by the Firemen, Policemen, and Fire Alarm Operators' Pension Fund (the Fund), Plan B (or the Plan).[2]

_____

[1]District Judge of the Western District of Louisiana, sitting by designation.

[2]Plan B is an uncodified pension plan that was created in 1973 by the voting members of the Fund. Plan B's creation was authorized by Section 11B of the former Texas Revised Civil Statutes, Article 6243a, which allowed Fund members to create a separate pension plan by comprehensive amendment to the provisions contained in the statute. Prior to the creation of Plan B, two other separate pension plans, the "Old Pension Plan" and "Plan A," existed independently from, but under the authorization of, former Article 6243a.

On 14 June 1989, the Texas legislature enacted Article 6243a–1, the successor statute to Article 6243a. Labeled the "Combined Pension Plan," the new statute was intended to combine the Old Pension Plan and Plan A into one comprehensive plan.

The benefits survived Mr. Russell's demise in 1981. Those benefits, in accordance with the Plan, were visited upon his widow, Alma Faye Russell.

The benefits terminated, again in accordance with the Plan provisions, when Alma Faye Russell remarried on 26 April 1986. The marriage ran aground and ended in divorce on 31 March 1988.[3] In February 1988, Russell sought reinstatement of Plan benefits reasoning that, upon divorce, she would reacquire widow status. The Board of Trustees (the Board) refused to reinstate Russell because the Plan specifically provided that benefits ceased upon her remarriage in 1986. According to the Plan, reinstatement was not authorized due to divorce from or death of the subsequent spouse.

In April 1988, the extant members of the Pension Plan voted on a proposed Plan amendment. The voting was conducted by a written response to a written ballot. There is no dispute as to the language of the official ballot disseminated in the spring of 1988.

*Voting instructions to members of the Police and Fire Pension Fund:*

1. You must vote at your regularly assigned work location.

2. Sign the voter registration.

3. Vote *INDIVIDUALLY* on *EACH* amendment.

4. After voting, sign the ballot on the detachable part, detach at the perforation, and give it to the person that is in charge of the ballot box.

5. Place your ballot in the ballot box provided. These changes are authorized in each instance by either Section 11A and/or Section 11B of Article 6243a of the Revised Civil Status of the State of Texas, as amended, and will be incorporated into each Plan respectively, if passed by a majority of the Fund's active membership. The results will be officially canvassed and announced by the Police and Fire Pension Board at the April, 1988 Board meeting....

6. Amendment to provide the continuation of a surviving spouse's benefit for the surviving spouse's life, regardless of remarriage. *Effective on the date the Board certifies the election results*

However, the vitality of Plan B was not threatened by the new statute, the sole purpose of which was to combine the two older pension plans. Hence, Plan B remains as a separate and uncodified pension plan, unaffected by the terms of the Combined Pension Plan.

[3]The appellant apparently reacquired the surname of Russell as a result of the divorce decree.

> *(April Board meeting) for all surviving spouses receiving benefits on that date, and all future recipients.* (Emphasis supplied).

The landslide election results in favor of Plan amendment were unanimously certified by the Board on 21 April 1988, the date the amendment became effective. The plan, after the amendment, provided, in part.

> (d) Survivor benefits shall be paid to all qualified survivors of members of this pension, subject to the following conditions:

(1) The qualified surviving spouse of the member shall be eligible to receive benefits for the remainder of such survivor's life.

By virtue of the April amendment, survivors' benefits would terminate on death only. Thus, termination by the first to occur of death or remarriage became a passé standard.

Russell urged the Board that this new provision opened the door for her reinstatement. Her request for reinstatement, premised on the terms of the amendment, was denied as she was not in the category of individuals to whom expanded benefits were accorded, i.e. only those survivors *receiving benefits* would continue to receive benefits in the event of remarriage. Russell was not receiving benefits at the time of plan amendment and therefore she was not entitled to the expanded benefits.

Russell filed suit against the Board and the City of Dallas on 11 May 1990. Both defendants were dismissed by the district court after granting the summary judgment motion filed by each. The appeal we consider today was filed by Russell. We will address the appellant's complaints in serial fashion.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo,* applying the same standard applied by the district court. *Wilson v. Job, Inc.,* 958 F.2d 653, 656 (5th Cir.1992). Hence, summary judgment will be proper if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Contrary to the assertions of appellant, the Plan is not controlled by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). Rather, this is a "government plan" that is maintained exclusively for Dallas city employees and is specifically exempt from ERISA. 29 U.S.C. § 1002(32). Appellant's suggestion that we should follow the Supreme Court's dictate for review of ERISA plans is therefore rejected.

III. ANALYSIS

The judgment of the district court bisected Russell's complaints into distinct categories: those complaints as to the Plan conditions prior to the 1988 amendment, and those complaints as to the Plan conditions subsequent to the 1988 Plan amendment. We will follow the district court's methodology.

A. Appellant's Pre–1988 Complaints.

Essentially, Russell's pre–1988 complaints center around the Plan requirement that one must retain the status of a widow or widower to draw continuously benefits from the Plan. More plainly, Russell claims that the Plan provision was an unlawful restraint on remarriage, violative of 42 U.S.C. § 1983 and the 14th amendment, and was contrary to public policy. Additionally, she alleges breach of contract and breach of fiduciary duty causes of action.

Russell did not bring her claim until more than four years after the termination of her benefits. As is well established, the prescriptive period applicable to a § 1983 claim involving an action by a Texas domiciliary is governed by the applicable Texas statute of limitations concerning torts. *Jackson v. Johnson,* 950 F.2d 263, 265 (5th Cir.1992). Moreover, appellant's complaints founded upon violations of the state and federal constitutions and the public policy of the United States and Texas, as well as the allegations of a breach of fiduciary duty, are also governed by the tort statute. A two year period is the applicable Texas statute. Tex.Civ.Prac. & Rem. § 16.003.

Although Texas law mandates the limitation period and tolling rules, federal law will dictate when a cause of action arises. *Jackson,* 950 F.2d at 265. Under federal law, the period begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Rodriguez v. Holmes,* 963 F.2d 799, 803 (5th Cir.1992) (quoting *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir.1987)).

Russell was fully aware that she would lose her benefits after she remarried. The correspondence sent by Russell to the Board just prior to her remarriage reveals that Russell undoubtedly knew her benefits would terminate upon remarriage.[4] Pursuant to the provisions of the Plan, she ceased to be a Plan participant on 26 April 1986, the date of her remarriage. In federal cases, the applicable statute of limitations is not tolled until the plaintiff's complaint is received by the court clerk. *Martin v. Demma,* 831 F.2d 69, 71 (5th Cir.1987); Fed.R.Civ.P. 3. Thus, any complaint by appellant as to § 1983 violations, constitutional violations, public policy violations, misrepresentation or fiduciary duty violations concerning the denial of benefits upon a surviving spouse's remarriage accrued *on the date of remarriage* and would have expired more than two years prior to the filing of her suit on 11 May 1990.

Applying the same date of accrual, Russell's breach of contract allegations are also barred by the applicable limitation statute. The only possible breach would have occurred when the Board failed to pay Russell under the plan. Contracts are governed by a four year statute of limitations. Tex.Civ.Pract. & Rem.Code § 16.004. Russell did not commence her action by the 26 April 1990 deadline, and is therefore precluded by the limitations statute.

Appellant describes the trustee's failure to pay each monthly benefit as a continuing violation

---

[4]In a letter to the Board dated 9 April 1986, Russell wrote:

> I'm planning to get married April 26, 1986. I want to let you know in advance so you can make the *final check* correct and won't have to be returned, etc. (emphasis added)

that suspends the running of the statute of limitations until the payments are restored. Appellant's reliance on a continuing tort is misplaced. The test to be applied in analyzing the problem is that emanating from *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), and summarized by this circuit in *Hendrix v. Yazoo City,* 911 F.2d 1102 (5th Cir.1990):

> As *Lorance* makes clear, the distinction does not turn on the type of discrimination, but on whether the practice at issue is part of or a repetition of a past discriminatory act, in which case there is a continuing violation, or whether it is facially neutral, simply giving effect to prior discrimination, in which case there is no continuing violation.

*Id.* at 1104. Put succinctly, the question is: did the original discriminatory act have the degree of permanence that should trigger the claimant's awareness of and duty to assert her rights. *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986).

As we have said, the discriminatory act was the termination of benefits due to claimant's remarriage. We have also recognized that appellant was unquestionably aware that her remarriage would and did sever her benefits. Her duty to assert any remaining rights in the Plan commenced on the date she stopped receiving checks. Yet, she took no action after the checks stopped. It was not until she had filed for divorce that Russell decided to "reapply" for benefits—apparently in the mistaken belief that her return to widow status would qualify her for reinstatement. On the basis of the unambiguous terms of the Plan, the Board declined to reinstate appellant. The Board's act of terminating of Russell's benefits upon remarriage was not revisited after her divorce, it was accomplished only once. Clearly, this is not a case involving a continuous tort.

B. Appellant's Post–1988 Complaints.

Russell reasons that she is a qualified surviving spouse (married to the member at the time of the member's death) and that the Plan B language, as amended on 26 April 1988, afforded her entitlement to benefits after that date. Again, we disagree.

No fair reading of the either the Plan B amendment or the ballot could result in a conclusion that the amendment was applicable to anyone other than a surviving spouse receiving benefits on the effective date of plan amendment, i.e., 21 April 1988. Not only does the ballot itself specifically exclude benefits to those surviving spouses not receiving benefits as of the effective date, but the applicable Texas law requires a prospective application of the language creating plan amendment. Under Texas law, "[a] statute is presumed to be prospective in its operation unless expressly made retroactive." Tex.Gov't.Code Ann. § 311.022 (Vernon 1988). It follows, of course, that amendments are also presumed not to apply retroactively. *Skoczylas v. Federal Bureau of Prisons,* 961 F.2d 543, 554 (5th Cir.1992); *Houston Indep. School Dist. v. Houston Chronicle Pub. Company,* 798 S.W.2d 580, 585 (Tex.App.1990, *writ denied* ).

Plain and simple, the clear language of the ballot expanded the class of beneficiaries only to those spouses receiving benefits as of 22 April 1988. To read the language more broadly would lead to absurd and unintended consequences. Because we find no issue as to any material fact as to whether Russell was retroactively covered by the Plan B amendment, it is unnecessary to consider the district court's holding that appellant lacked standing to challenge the post amendment actions of the Board.

IV. CONCLUSION

The district court did not err in granting summary judgment against appellant on all issues. Were we to rule in favor of appellant on any issue, we may have had to consider the validity of the dismissal of the City of Dallas by the district court. We need not consider the liability of the City of Dallas as we have affirmed the district court's determination that there was no genuine issue as to any material fact that plaintiff's rights as a beneficiary in the Plan terminated on 26 April 1986 and that all possible causes of action have prescribed.

The summary judgments are AFFIRMED.