7 F.3d 533
 62 USLW 2296, 17 Employee Benefits Cas. 1377,
Pens. Plan Guide P 23887B
 Vincent ASTOR; Dennis Dangel; Richard Herbruck; Linda
Hickle; F.J. Madera; Joe Manzella; Robert
Steinberg; Lynn Steiner; Jack Walsh,
Plaintiffs-Appellants, Cross-Appellees,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant-Appellee, Cross-Appellant.
 Nos. 92-3819, 92-3833.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 28, 1993.
Decided Oct. 20, 1993.
 
 Alan Belkin (argued and briefed), Shapiro, Turoff, Gisser & Belkin, Cleveland, OH, for plaintiff-appellant, cross-appellee.
 Michael S. Horne (argued), Covington & Burling, Washington, DC, Tony C. Merry, Vorys, Sater, Seymour & Pease, Columbus, OH, John Winship Read (briefed), Vorys, Sater, Seymour & Pease, Cleveland, OH, Kenneth B. Hammer, IBM Legal Dept., Southfield, MI, for defendant-appellee, cross-appellant.
 Before: MILBURN and GUY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Nine former employees of IBM appeal the district court's decision awarding judgment to their former employer on the pleadings in this ERISA action. IBM, in turn, appeals the district court's decision denying its counterclaim for costs and attorney fees. We affirm the district court's determinations in part, and reverse in part, for the following reasons.
 
 I.
 
 2
 Plaintiffs-appellants/cross-appellees Vincent Astor, Dennis Dangel, Richard Herbruck, Linda Hickle, F.J. Madera, Joe Manzella, Robert Steinberg, Lynn Steiner, and Jack Walsh (collectively "the employees") are former employees of defendant-appellee/cross-appellant International Business Machines Corporation ("IBM"). The employees voluntarily resigned their positions with IBM as part of a company-wide reduction in force pursuant to an enhanced benefits severance plan termed the "Individual Transition Option Program" (the "Program") which IBM developed to induce voluntary employment terminations.
 
 
 3
 The Program was explained in a Summary Plan Description ("Summary") which IBM issued to its employees. The Summary provided (in relevant part):
 
 
 4
 As a matter of prudent business planning, IBM is continually reviewing and evaluating various proposals for changes in compensation and retirement programs, as well as proposals for special exit incentive programs like the current program. Some of these proposals, if finally approved and implemented, might be more advantageous or less advantageous than the current program. Because of the need for confidentiality, such decisions are not discussed or evaluated below the highest level of management. Any managers below such levels do not know whether IBM will or will not adopt any future compensation and/or retirement programs and are not in a position to advise any employee whether or not to participate in the ITO Program or to speculate about future programs. Unless and until such changes are formally announced by the company no one is authorized by IBM to give assurance that such changes will or will not occur.
 
 
 5
 If you choose to participate in the ITO Program, you should understand that IBM may adopt new or modified programs or benefits in the future that depending on your individual circumstances may be more or less advantageous to you than the current program. You should not expect or assume that any such new or modified programs or benefits will be extended on a retroactive basis to anyone who leaves IBM under the current program.
 
 
 6
 If you elect not to take advantage of the current program, you should understand that IBM may not offer any new or modified program or benefits or that, depending on your individual circumstances, any such new or modified program may be less advantageous to you than the current program.
 
 
 7
 ....
 
 GENERAL RELEASE AND COVENANT NOT TO SUE
 
 8
 . . . . .
 
 
 9
 IBM ADVISES YOU TO CONSULT AN ATTORNEY BEFORE YOU SIGN THIS RELEASE
 
 
 10
 If you feel that you are being coerced to sign this release or that your signing would for any reason not be voluntary, or you believe the process by which you have been offered this release or the payment in exchange for this release is discriminatory, you are encouraged to discuss this with your management or Personnel before signing this release.... You should thoroughly review and understand the effects of the release before signing it.
 
 
 11
 In exchange for the sums and benefits which you will receive pursuant to the terms of the Individual Transition Option Program, [employee name] (hereinafter "you") agrees to release International Business Machines Corporation (hereinafter "IBM") from all claims, demands, actions or liabilities you may have against IBM which are related to your employment with IBM or the termination of that employment. You agree that this also releases from liability IBM's agents, directors, officers, employees, representatives, successors and assigns (hereinafter "those associated with IBM"). You agree that you have executed this release on your own behalf, and also on behalf of any heirs, agents, representatives, successors and assigns that you may have now or in the future. You also agree that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal or state law dealing with discrimination in employment on the basis of sex, race, national origin, religion, disability, or age. You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise. This release does not include your vested rights if any in the IBM Retirement Plan, which survive unaffected by this release.
 
 
 12
 You agree that you will never institute a claim or charge of employment discrimination with any agency or sue IBM, or those associated with IBM, concerning any claim you may have relating to your employment with IBM or the termination of that employment. If you violate this release by suing IBM or those associated with IBM, you agree that you will pay all costs and expenses of defending against the suit incurred by IBM or those associated with IBM, including reasonable attorneys' fees.
 
 
 13
 You acknowledge and agree that:1. The benefits provided pursuant to the ITO Program constitute consideration for this release, in that there are benefits to which you would not have been entitled had you not signed this release.
 
 
 14
 2. You have been given a period of at least forty-five (45) days within which to consider this release and to review [relevant documents].
 
 
 15
 3. This release does not waive any claims that you may have which arise after the date you sign the release.
 
 
 16
 ....
 
 
 17
 5. You have not relied on any representations, promises, or agreements of any kind made to you in connection with your decision to accept the ITO Program except for those set forth in the ITO Summary Plan Description and other official plan documentation.
 
 
 18
 ....
 
 
 19
 This release is not effective or enforceable for seven days after you sign it and you may revoke it during that time....
 
 
 20
 Joint Appendix at 25, 133-36 (footnote omitted). The plaintiffs-appellants/cross-appellees concede that each one of them received the Summary and executed the General Release and Covenant Not to Sue. IBM concedes that the Program is an employee benefits plan subject to the terms of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended.
 
 
 21
 The employees initiated this ERISA action on January 30, 1992, pursuant to 29 U.S.C. § 1132(e)(1) which provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary." The employees' complaint alleged (in relevant part):
 
 
 22
 6. Despite the representations made in the summary plan description that participation in the ITO program by eligible employees was voluntary and that eligible employees would be given until December 31, 1991 to decide whether they would participate in the ITO program, defendant, through its agents, specifically told each plaintiff that each plaintiff must determine whether he or she wished to participate in the ITO program no later than July 31, 1991, the initial date of departure eligibility, or the program would not be available to [the] plaintiff thereafter. Defendant, through its agents, again in contravention of the stated terms and provisions of the ITO program advised each plaintiff that if each plaintiff did not elect to participate in the ITO program within the time parameters stated by defendant's agent there was a substantial likelihood that each plaintiff's job with defendant would be eliminated and each plaintiff would be separated from defendant's employ without the benefits attendant to the ITO program....
 
 
 23
 7. Relying upon the representations made to them by defendant's agents, particularly the representations that if each plaintiff did not immediately elect to participate in the ITO program that program would not be available to them, each plaintiff resigned his or her position with defendant effective July 31, 1991 except plaintiff Steiner [who] received permission to resign her position in or about October, 1991.
 
 
 24
 8. Subsequent to each plaintiff's resignation but prior to December 31, 1991 defendant advised eligible employees that the participation period for the ITO program was extended to July 31, 1992....
 
 
 25
 9. By virtue of the material misrepresentations and express and implied threats made by defendant's agents to each plaintiff, each plaintiff's early entry into the ITO program caused each plaintiff to lose benefits that would have been available to him or her had each plaintiff been afforded the benefit of the original ITO program termination date of December 31, 1991 or the extended ITO termination date of July 31, 1992. Each plaintiff's losses include, but are not limited to, salary each plaintiff would have earned, benefits that would have been paid, additional severance pay credits that each plaintiff would have earned and additional pension credits that each plaintiff would have earned had each plaintiff not been mislead and coerced into involuntary early entry into the ITO program.
 
 
 26
 Complaint at 4-6.
 
 
 27
 On February 20, 1992, IBM filed a counterclaim seeking attorney fees and costs pursuant to the terms of the covenants not to sue and, alternatively, to the terms of 29 U.S.C. § 1132(g)(1) which provides: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."
 
 
 28
 On June 1, 1992, the district court granted IBM's motion for judgment on the pleadings with respect to the employees' substantive claims but denied IBM's counterclaim for attorney fees and costs:
 
 
 29
 As previously stated, the plaintiffs' claims rest solely on the allegation that IBM breached its fiduciary duty by misrepresenting that the ITO program would no longer be available after July 31, 1991 in order to induce them to terminate their employment a year earlier than required....
 
 
 30
 However, this allegation directly contradicts the written release agreement that each plaintiff signed. In that agreement, each plaintiff stated that he or she had not relied on any statements or representations, not otherwise contained in the written plan, in making this decision. "The parol evidence rule precludes the introduction of evidence of conversations or declarations which occur prior to or contemporaneously with a written contract and which attempt to vary or contradict terms contained in the writing."
 
 
 31
 Although evidence of oral misrepresentations is generally admissible to demonstrate fraud in the inducement, a party "cannot argue that he was the victim of fraud and misrepresentation when the terms of the written [agreement], which he signed, specifically refute that argument." Accordingly, since the plaintiffs cannot introduce evidence of oral misrepresentations to demonstrate a breach of fiduciary duty under ERISA, IBM is entitled to judgment with respect to their claims.
 
 
 32
 ....
 
 
 33
 In its counterclaim, IBM seeks attorneys' fees and costs based on two legal grounds: (1) ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and (2) breach of the written covenant not to sue. In an ERISA action by a plan participant, beneficiary or fiduciary, the trial court has the discretion to award a reasonable attorney's fee to either party. In exercising this discretion, this Court must consider the following factors:
 
 
 34
 (1) the degree of the opposing party's culpability;
 
 
 35
 (2) the opposing party's ability to satisfy an award of attorneys' fees;
 
 
 36
 (3) the deterrent effect of an award on other persons under similar circumstances;
 
 
 37
 (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
 
 
 38
 (5) the relative merits of the parties' positions.
 
 
 39
 While the plaintiffs have not prevailed on the merits of their claims, this Court finds that their lawsuit was not frivolous or brought in bad faith. More importantly, this Court finds that a fee award is inappropriate because it would deter similar suits by plan participants who honestly believe that they have been illegally denied ERISA benefits, but lack the resources to risk paying the other party's costs and attorneys' fees. Accordingly, this Court will not award any attorneys' fees under 29 U.S.C. § 1132(g)(1).
 
 
 40
 IBM also asserts that it is entitled to attorneys' fees under the terms of the release agreement. Under that agreement, all of the plaintiffs are barred from filing suit against IBM for any claim relating to their employment with IBM or the termination of that employment. While this covenant not to sue broadly covers all claims relating to the employment relationship, it cannot cover suits that challenge the validity of the release agreement itself. Otherwise, the plaintiffs would be denied the means to escape a voidable obligation not to sue. Accordingly, the plaintiffs did not breach the terms of the covenants not to sue when [they] filed this action against IBM.
 
 
 41
 District Court's June 1, 1992 Memorandum and Order at 4-7 (citations omitted) (emphasis and brackets in original).
 
 
 42
 The employees moved for reconsideration on June 11, 1992. On July 8, 1992, the district court denied reconsideration. The parties thereafter filed timely notices of appeal.
 
 II.
 Standard of Review
 
 43
 The district court granted IBM's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), with respect to the employees' claims but denied IBM's counterclaim for attorney fees and costs. After "accept[ing] all the factual allegations of the complaint as true," Paskvan v. City of Cleveland Civil Serv. Comm'n, 946 F.2d 1233, 1235 (6th Cir.1991) (citing Beal v. Missouri Pacific R.R., 312 U.S. 45, 51, 61 S.Ct. 418, 421, 85 L.Ed. 577 (1941)), we must review the judgment de novo to determine "whether the moving party is entitled to judgment as a matter of law." Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir.1993).
 
 Standing
 
 44
 Defendant-appellee/cross-appellant IBM maintains that "[e]ven if the district court erred in granting judgment for IBM based upon its analysis of the parol evidence rule, it would have been justified in awarding judgment in favor of IBM because [the employees], having received all which they were entitled to receive under [the Program], lack standing to maintain an ERISA claim." Appellee's Brief at 19. Relying on a strained interpretation of Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947 (6th Cir.1990), cert. denied, 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991), IBM argues that the employees lack standing because they have "received everything they were entitled to receive under the terms of the plan," Appellee's Brief at 21, and are, therefore, no longer plan participants protected by ERISA's provisions. We reject IBM's position.
 
 
 45
 ERISA authorizes a "participant" to commence a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A participant may also sue to enforce ERISA provisions. 29 U.S.C. § 1132(a)(3)(B)(ii). A "participant" is
 
 
 46
 any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
 
 
 47
 29 U.S.C. § 1102(7). Though IBM maintains that the plaintiffs-appellants/cross-appellees are not plan participants, this court previously rejected this same argument:
 
 
 48
 In determining who is a "participant," for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of plaintiffs' claim that they are not receiving the full extent of the benefits to which they are entitled from the employee benefit plan which is paying them retirement benefits. The doctrine of standing is concerned with whether a person is the proper party to request adjudication of a particular issue, whether a person has alleged such a personal stake in the outcome of a justiciable controversy that he should be entitled to obtain its judicial resolution. Standing focuses on a person's effort to get his complaint before a court and not on the issue he wishes to have adjudicated.
 
 
 49
 ....
 
 
 50
 Here, plaintiffs allege that they are former employees who are receiving benefits from their employee benefit plan and seek to recover additional benefits to which they claim they are entitled, but are being denied them as the result of defendants' conduct. Accordingly, they have alleged, under both ERISA and traditional concepts of standing, a sufficient personal stake in the outcome of a justiciable controversy to obtain a judicial resolution of their dispute with defendants. They are within the zone of interests ERISA was intended to protect.
 
 
 51
 Hughes v. General Motors Corp., 852 F.2d 568 (6th Cir.1988) (unpublished) (citations omitted), cert. denied, 489 U.S. 1081, 109 S.Ct. 1535, 103 L.Ed.2d 839 (1989).
 
 
 52
 Though Teagardener appears, at first blush, to support IBM's position, further analysis reveals that the employees in Teagardener were contesting the terms of the dissolution of their pension plan whereas the plaintiffs-appellants/cross-appellees are contesting IBM's actions leading to the employees' decisions to participate in the Program. We therefore reject IBM's assertion that the employees lack standing to maintain this ERISA action.
 
 The Signed Releases
 
 53
 On appeal, the employees maintain that the district court erroneously applied the parol evidence rule because the "[a]ppellants are not seeking to explain or vary the clear terms of the release agreements. Rather, appellants argue that the release agreements are fundamentally defective and should not be given force and effect [because] the manner in which their signatures ... were procured was legally flawed." Appellants' Brief at 5-6. Specifically, the employees assert that IBM knowingly misled them by stating that the Program would not be available to them if they did not elect to participate in the Program by July 31, 1991. In response, IBM maintains: "A parol evidence rule consistent with ERISA cannot permit Employees to validate those provisions of an ERISA plan which benefit them, while avoiding terms of the same ERISA plan which impose obligations upon them. A parol evidence rule consistent with ERISA must bar evidence of statements inconsistent with the terms of the written ERISA plan. The district court correctly held that Employees' claims of misrepresentation were barred by ERISA and the parol evidence rule, and it correctly granted judgment for IBM on the Employees' complaint." Appellee's Brief at 15-16.
 
 
 54
 Though the Program remained open to eligible IBM employees until December 31, 1991, See IBM's Answer and Counterclaim at 2 ("Defendant admits ITO-I remained open to eligible employees until December 31, 1991."), the employees claim that each one of them was told by his or her supervisor that he or she must elect to participate in the Program by July 31, 1991, or forever lose the right to participate. The district court properly determined that the employees' claims are barred by the parole evidence rule because the employees are attempting to contradict the terms of the signed releases which incorporate, by inference, the Summary and other plan documentation which provide for a December 31, 1991 eligibility deadline.
 
 
 55
 The district court determined, and the parties do not dispute, that the signed releases are fully integrated by the clause: "You have not relied on any representations, promises, or agreements of any kind made to you in connection with your decision to accept the ITO Program except for those set forth in the ITO Summary Plan Description and other official plan documentation." Joint Appendix at 135. The law in Ohio concerning the effect to be given to a fully integrated agreement is clear:
 
 
 56
 Where the parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions.... Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence.
 
 
 57
 Construction Interior Sys., Inc. v. Marriott Family Restaurants, Inc., 984 F.2d 749, 754 (6th Cir.) (emphasis in original), cert. denied, --- U.S. ----, 114 S.Ct. 194, 126 L.Ed.2d 152 (1993) (quoting Aultman Hosp. Ass'n v. Community Mut. Ins. Co., 46 Ohio St.3d 51, 544 N.E.2d 920, 923 (1989)). "Even where a contract is not fully integrated, parol evidence cannot be admitted if its effect will be to vary or contradict any matter that is specifically covered by the written terms of the contract." Marriott Family Restaurants, 984 F.2d at 754 (citation omitted). Moreover,
 
 
 58
 Ohio law further provides that "interpretation of written contract terms is a matter of law for initial determination by the court.... It is only when the relevant contract language is ambiguous that the job of interpretation is turned over to the fact finder ... and the determination whether a contract is ambiguous is made as a matter of law by the court."
 
 
 59
 Id. (quoting Potti v. Duramed Pharmaceuticals, Inc., 938 F.2d 641, 647 (6th Cir.1991)).
 
 
 60
 Though the employees attempt to circumvent the parol evidence rule by claiming that IBM fraudulently induced them to participate in the Program by misrepresenting material aspects of the Program, the releases executed by the employees specifically note that the employees "have not relied on any representations, promises, or agreements of any kind made ... in connection with [the] decision to accept the ITO Program except for those set forth in the ITO Summary Plan Description and other official plan documentation." Joint Appendix at 135. Because the employees had no right to rely on oral representations in contravention of the express terms of the releases that they executed, we reject the employees' claims because the district court properly determined that the employees' action is barred by the parol evidence rule. See also Musto v. American Gen. Corp., 861 F.2d 897, 910 (6th Cir.1988) (Under ERISA, "the clear terms of a written employee benefit plan may not be modified or superseded by oral undertakings on the part of the employer."), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).
 
 Attorney Fees and Costs
 
 61
 In its counterclaim, IBM, citing the signed covenants not to sue and 29 U.S.C. § 1132(g)(1), seeks attorney fees and costs. The district court rejected IBM's claim under section 1132(g)(1) because the employees' action "was not frivolous or brought in bad faith," District Court's June 1, 1992 Memorandum and Order at 6-7, and "a fee award ... would deter similar suits by plan participants who honestly believe that they have been illegally denied ERISA benefits." Id. at 7. The district court rejected IBM's "covenant not to sue" claim because the covenants "cannot cover suits that challenge the validity of the release agreement itself." Id. On appeal, IBM maintains that the district court improperly refused to enforce the unequivocal attorney fees and costs provisions of the covenants not to sue. IBM does not appeal the district court's 29 U.S.C. § 1132(g)(1) determination.
 
 
 62
 The releases signed by the employees include covenants not to sue which provide:
 
 
 63
 You agree that you will never institute a claim or charge of employment discrimination with any agency or sue IBM, or those associated with IBM, concerning any claim you may have relating to your employment with IBM or the termination of that employment. If you violate this release by suing IBM or those associated with IBM, you agree that you will pay all costs and expenses of defending against the suit incurred by IBM or those associated with IBM, including reasonable attorneys' fees.
 
 
 64
 Joint Appendix at 134-35.
 
 
 65
 Because the employees executed, and breached, their covenants not to sue, we find that IBM is entitled to reasonable attorney fees in accordance with the unambiguous language of the General Release and Covenant Not to Sue. See generally Artvale, Inc. v. Rugby Fabrics Corp., 363 F.2d 1002, 1008 (2d Cir.1966) ("[I]t is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any breach will entail liability for damages, including the most certain of all--defendant's litigation expense."). Accordingly, we remand this action to the district court for a determination of reasonable attorney fees to be imposed upon each of the employees.
 
 III.
 
 66
 We AFFIRM the district court in part, and REVERSE in part, for the aforementioned reasons.