Audrey MEDOY, Plaintiff,

v.

WARNACO EMPLOYEES' LONG TERM DISABILITY INSURANCE PLAN, and Warnaco Inc., personally and as Administrator of the Warnaco Employees' Long Term Disability Insurance Plan, Defendants.

No. 97 CV 6612(SJ).

United States District Court, E.D. New York.

April 6, 1999.

Legal Services for the Elderly, New York City, by Edgar Pauk, for plaintiff.

Seyfarth, Shaw, Fairweather & Geraldson, New York City, by Edward Cerasia II, Mara–Louise Anzalone, for defendants.

## MEMORANDUM AND ORDER

JOHNSON, District Judge.

Audrey Medoy ("Plaintiff") brings this action against the Warnaco Employees' Long Term Disability Insurance Plan (the "Plan") and Warnaco, Inc. ("Warnaco"),

personally and as administrator of the Plan (collectively, "Defendants"), under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1001–1461 (1994).[1] Defendants presently move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. For the reasons set forth herein, Defendants' motion is denied.

## BACKGROUND[2]

Plaintiff was employed by the White Stag Corporation ("White Stag") between August 13, 1979 and February 13, 1983, when she stopped working due to the onset of Crohn's disease. With the assistance of William R. Horner, an attorney, she filed an application for long-term disability benefits with the Plan, which was fully insured by Cigna Group Insurance ("CIGNA"), and began receiving benefits on June 25, 1984 (retroactive to the date of her application). Warnaco subsequently acquired White Stag's assets.

Plaintiff applied for Social Security disability benefits on the advice of Warnaco, and was informed that upon receipt of a Social Security award her benefits would be adjusted accordingly. Her initial application was denied on November 16, 1984, and the appeal was denied on August 21, 1985. Plaintiff forwarded copies of these decisions to CIGNA. A later application resulted in an award of Social Security disability benefits on October 3, 1989, which was initially made retroactive to April 1987 and was subsequently made retroactive to May 31, 1985.

On or about August 31, 1987, the Plan discontinued benefit payments to Plaintiff without providing notice as required by ERISA § 503, 29 U.S.C. § 1133.[3] On July 22, 1993—nearly six years after her benefits were terminated—Plaintiff, by her attorneys, delivered to Warnaco a written request for resumption of her long-term disability benefits, and for the production of "copies of all documents and correspondence, which contain the reason(s) and basis for the termination of Ms. Medoy's disability benefits." Having received no response, she renewed her request and additionally asked for "a current copy of the long term disability plan, including the claim and appeal procedure as soon as possible," on November 3, 1993.[4] She was informed that under the terms of the Plan, CIGNA was responsible for retaining Plan records and responding to information requests from Plan participants. CIGNA later indicated that it had destroyed Plaintiff's file, and therefore could not respond to the document requests.

Plaintiff then appealed the decision to terminate her long-term disability benefits, on April 22, 1994. After further corre-

---

1. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331, and ERISA §§ 502(a)(1)(A) and (B), and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), and 1132(a)(3); venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

2. The facts stated herein are taken from the allegations of the complaint.

3. Section 1133 states:
   In accordance with regulations of the Secretary, every employee benefit plan shall—
   (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

   (2) afford a reasonable opportunity to any participant whose claim for benefits ·has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

4. Plaintiff's reference to an earlier date in paragraph 44 of the Complaint was apparently mistaken. *See* Complaint at ¶¶ 27, 43; Exhibit A to Defendant's Memorandum of Law in Support of Motion to Dismiss; *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (holding that courts may consider a document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

spondence with Warnaco, and having received no decision on her appeal, Plaintiff issued a letter dated August 20, 1996, demanding the resumption of benefits, and subsequently filed this action on November 12, 1997. The complaint alleges several claims: that CIGNA's termination of her benefits breached the terms of the Plan in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); that the failure of Warnaco, as Plan administrator, to provide requested documents breached the disclosure requirements of § 1132(c)(1); and that Warnaco's failure to maintain files regarding Plaintiff's claim determination contravened ERISA § 107, 29 U.S.C. § 1027. Plaintiff seeks declaratory and injunctive relief, as well as retroactive and continuing long-term disability benefits, statutory penalties for the failure to provide documents and costs and attorney's fees.

Defendants contend that Plaintiff's benefits claim should be dismissed as untimely. They further argue that Plaintiff is not within the class of persons owed a duty of disclosure, *see* ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and that Warnaco had no duty to retain Plaintiff's claims records under ERISA.

## DISCUSSION

### I. *Rule 12(b)(6) Standard*

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the function of the district court is to assess the legal feasibility of the complaint, not to weigh the evidence that may be offered at trial. *See LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991). The court must accept as true all material facts well pleaded in the complaint and must make all reasonable inferences in the light most favorable to the plaintiff. *Id.; see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss should be granted

only when it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### II. *Benefits Claim*

ERISA does not prescribe a statute of limitations for actions under Section 502. In this case, the parties do not dispute the applicability of the six-year limitations period for breach of contract actions in Rule 213(2) of the New York Civil Practice Law and Rules, which the Second Circuit has held to be the most analogous state limitations statute and therefore applicable to ERISA benefits claims. *Miles v. New York State Teamsters Conference Pension Plan,* 698 F.2d 593, 598 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).[5] Accordingly, Plaintiff's claim alleging wrongful termination of benefits is untimely if it accrued before November 1991.

"The Second Circuit in *Miles* also announced the rule that the moment of accrual in a Section 1132 action is 'when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries.'" *Patterson–Priori v. Unum Life Ins. Co. of America,* 846 F.Supp. 1102, 1106 (E.D.N.Y.1994) (quoting *Miles,* 698 F.2d at 598). This standard has since been reaffirmed by the Second Circuit. *See Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan,* 902 F.2d 1069, 1073–74 (2d Cir.1990) (holding that correspondence which did not clearly repudiate claimant's rights as a survivor of a plan participant was not sufficient to trigger the statute of limitations). It is well established that an ERISA cause of action accrues upon the denial of an application for benefits, provided that "[t]he repudiation or denial of benefits [is]

---

**5.** *But see Patterson–Priori v. Unum Life Ins. Co. of America,* 846 F.Supp. 1102, 1105–06 (E.D.N.Y.1994) (applying three-year statute of

limitations specifically provided for by long-term disability plan).

'clear,' 'unequivocal,' and 'continuing.'" *Mitchell v. Shearson Lehman Bros., Inc.,* No. 97 Civ. 0526, 1997 WL 277381, at *2 (S.D.N.Y. May 27, 1997) (quoting *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 66 (7th Cir.1996)); *see also Patterson–Priori,* 846 F.Supp. at 1106. Because Defendants provided no notice to Plaintiff when her disability benefits were initially terminated, Plaintiff claims that the decision was not "clear and made known" to her until at least July 31, 1995—the date of what Plaintiff contends is the first correspondence from Defendant that constituted a denial of benefits.

Because Plaintiff was represented by counsel at the time her benefits were terminated and in prior dealings with Defendants,[6] Defendants argue that under the circumstances she either knew or should have known of her claim at the time her benefits were terminated and, therefore, her cause of action accrued on August 31, 1987 despite Defendants' failure to provide notice. But in the cases relied upon by Defendants—almost exclusively from outside this circuit—the courts were deciding motions for summary judgment, not dismissal under Rule 12(b)(6), and the facts of each case are distinguishable. In *Corbett v. International Ass'n of Bridge, Structural and Ornamental Iron Workers,* No. 90 Civ. 4161, 1992 WL 178762 (E.D.N.Y. July 14, 1992), for example, the plaintiff's right of action was held to have accrued when pension contributions made on his behalf were returned to his union, and the court granted summary judgment for the defendant. Unlike here, however, the returned check was accompanied by a letter from the pension plan administrator explaining why he was "required by the Plan provisions and by the law" to refund the contributions. *Id.* at *4. Similarly, summary judgment for the defendant was appropriate in *Duch v. Allied Structural Steel Co.,* No. 85 Civ.1953, 1986 WL 7074 (N.D.Ill. June 16, 1986), where plaintiff's cause of action had accrued when he was "unequivocally notified" by letter regarding the method by which his benefits would be calculated, and therefore possessed "all the information he needed to file his claim for enhanced pension benefits." *Id.* at *1–3.[7]

Defendants also cite a Fifth Circuit case in which the court granted summary judgment for the defendant, holding that a plan participant's surviving spouse's "duty to assert any remaining rights in [a pension plan] commenced on the date she stopped receiving checks." *Russell v. Board of Trustees of Firemen, Policemen and Fire Alarm Operators' Pension Fund of Dallas,* 968 F.2d 489, 493 (5th Cir.), *cert. denied,* 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993). However, that decision rested upon undisputed proof that the plaintiff had actual knowledge regarding her claim: the termination of benefits was due to her remarriage following the death of the plan participant, and correspondence from plaintiff to the plan's board of trustees established that she "undoubtedly knew her benefits would terminate upon remarriage." 968 F.2d at 493. Furthermore, to the extent that the discovery rule of accrual applied in *Russell*[8] may be distinct from the "clear and made known" standard set forth for ERISA claims in *Miles* and *Lar-*

---

6. *See* Complaint at ¶¶ 16, 19.

7. Defendants seek to analogize this case to *Adamson v. Armco, Inc.,* 44 F.3d 650, 653–54 (8th Cir.), *cert. denied,* 516 U.S. 823, 116 S.Ct. 85, 133 L.Ed.2d 42 (1995), in which an employer's Chapter 11 bankruptcy terminated its unfunded welfare benefit plans, thereby ending all payments to beneficiaries. Not only are those facts clearly distinguishable, but the issue actually decided in *Adamson* was whether the ongoing failure to pay benefits constituted a continuing breach for statute of limita-

tions purposes, not whether the plaintiffs' claims initially accrued upon the occurrence of bankruptcy.

8. *See id.* (applying federal common law rule that the statute of limitations begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured") (internal quotation marks and citations omitted).

*sen*, this Court is obligated to follow the Second Circuit rule.

▉ Defendants have not cited, and this Court has not found, any cases holding that a repudiation was "clear and made known" to a claimant despite the fiduciary's failure to communicate any actual notice of its decision to deny a benefits application or terminate existing benefits. At least one court in this district has rejected such a conclusion, holding that where claim forms were returned unprocessed or not returned at all, the plaintiff did not have "clear notice" sufficient to satisfy the standard for accrual announced in *Miles*. *Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co.*, 1996 WL 497085, at *6 (E.D.N.Y. Aug.26, 1996) (denying defendant's motion to dismiss); *see also Smith v. Rochester Telephone Business Marketing Corp.*, 786 F.Supp. 293, 307–08 (W.D.N.Y.1992) (plaintiff's receipt of statements showing the pension contributions being made to his account was not sufficient to constitute clear repudiation of claim for higher benefit level, since defendant never explained how the contribution amounts had been derived), *aff'd*, 40 F.3d 1236 (2d Cir.1994) (unpublished table decision).[9] Based upon the allegations in the Complaint, this Court concludes that a "clear repudiation" as contemplated by *Miles* occurred, at the earliest, when Plaintiff first received correspondence from Defendants regarding the cessation of her benefits; the action was thus filed well within the statute of limitations.

▉ Plaintiff's failure to exhaust administrative remedies is an alternative ground

for dismissal, according to Defendants. *See, e.g., Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993) (noting "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases"). As Defendants acknowledge, a plaintiff may be excused from this jurisdictional prerequisite if she makes a "clear and positive showing" that pursuit of administrative remedies would have been futile. *Id.* at 594. Among the circumstances that may justify a finding of futility is a fiduciary's failure to timely respond to a claimant's written request for review of a benefit eligibility determination, or to inform the claimant regarding the appeals process. *See Ritzer v. National Org. of Indus. Trade Unions Ins. Trust Fund*, 807 F.Supp. 257, 260 (E.D.N.Y.1992) (where decision on administrative appeal was not rendered within time period prescribed by 29 C.F.R. § 2560.503–1(h)(4), appeal deemed constructively denied); *cf. Belvidere Home Infusion Services, Inc. v. Guardian Life Ins. Co.*, No. 94 Civ. 0778, 1996 WL 524402, at *5 (E.D.N.Y. Sept.6, 1996) (failure to exhaust unjustified where claimant was informed about appeals procedure). In deciding whether the apply the futility exception, courts should consider the purposes of the exhaustion requirement, which are to:

(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of

9. *Ambris v. Bank of New York*, No. 96 Civ. 0061, 1998 WL 702289 (S.D.N.Y. Oct.7, 1998), is more supportive of Defendant's position. There the court determined that a benefits claim had accrued despite the absence of the type of statement which would, "[i]n a typical case, [constitute] the clear repudiation contemplated by *Miles.*" *Id.* at *6. However, *Ambris* was decided on summary judgment, and the accrual issue there did not concern the denial of a benefits application or a termination of existing benefits. The case was "atypical" because the plaintiff never applied

for benefits, and the defendants thus did not have "an opportunity to provide her with the type of clear repudiation" that is normally contemplated. *Id.* at 9. Instead, the court's accrual finding was based upon the plaintiff's own deposition testimony, which established that knowledge regarding her ineligibility for pension benefits due to her employment status was "clear and pervasive" at her workplace, and that the plaintiff had discussed the issue on numerous occasions with her supervisor and with co-workers who were similarly ineligible. *Id.* at *6–8.

fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.

*Kennedy,* 989 F.2d at 594 (quoting *Denton v. First Nat'l Bank of Waco,* 765 F.2d 1295, 1300 (5th Cir.1985)).

■ Here, the complaint alleges that Plaintiff was notified on a number of occasions, beginning in December 1993, that her claims file had been destroyed, and was informed on July 31, 1995 that her benefits had been terminated for not meeting the policy's disability requirement. No decision regarding her administrative appeal was ever issued. These facts, if true, clearly establish futility, since Defendants not only failed to respond to Plaintiff's appeal but apparently were unable to do so due to the destruction of Plaintiff's claims records. None of the purposes underlying the exhaustion doctrine would be served by a dismissal in this case.

Finally, since a participant is required to file an administrative review of a benefits eligibility determination within sixty days, *see* 29 C.F.R. § 2560.503–1(g)(3), Defendants argue that Plaintiff's years of delay in initiating review should foreclose her reliance on the futility exception. They note, in particular, Plaintiff's allegation that she was represented by counsel at the time her benefits were terminated and in prior dealings with Defendants. However, given Defendant's total failure to provide notice regarding the cessation of benefits—which implicates ERISA's underlying policy of "ensur[ing] that 'disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of [pension] plans,' "[10] the Court concludes that Plaintiff's delay is insufficient grounds to justify dismissal. *See Gaides,* 1996 WL 497085, at *6 (denying motion to dismiss on timeliness grounds despite plaintiff's failure to seek administrative review of adverse benefits decision for up to eight years before filing

lawsuit, since defendant had never provided notice of its decision); *Smith,* 786 F.Supp. at 307–08 (plaintiff's failure to appeal benefits calculation did not bar claim for nine years' retroactive application of higher benefit level, where no notice of benefits eligibility determination had been given); *see also Barnett v. International Business Machines Corp.,* 885 F.Supp. 581, 587–88 (S.D.N.Y.1995) ("A court may ... take equitable considerations into account when determining whether to dismiss a claim for failure to exhaust administrative remedies...."); *Tiger v. AT & T Technologies Plan for Employees' Pensions, Disability Benefits,* 633 F.Supp. 532, 534 (E.D.N.Y.1986) (same). The motion to dismiss Plaintiff's claim for wrongful termination of benefits must be denied.

### III. *Claim for Failure to Disclose Documents*

The second cause of action alleges that Warnaco's failure to provide the documents requested by Plaintiff violated § 104(b)(4) of ERISA, which requires plan administrators to disclose certain plan documents upon "the written request of any participant or beneficiary." 29 U.S.C. § 1024(b)(4). The complaint seeks statutory penalties pursuant to ERISA § 502(c)(1), which states that a plan administrator who fails to make a required disclosure to a participant or beneficiary within 30 days after a request for information may be held personally liable for up to $100 a day from the date of failure. *See* 29 U.S.C. § 1132(c)(1). Warnaco moves for dismissal of this claim on the ground that Plaintiff was no longer a plan "participant" at the time of her requests, and therefore was not owed a duty of disclosure under ERISA.

As defined by ERISA,

[t]he term "participant" means any employee or former employee of an em-

---

**10.** *Gaynor v. Ephrata Community Hosp.,* 690 F.Supp. 373, 381 (E.D.Pa.1988) (quoting

ERISA § 2, 29 U.S.C. § 1001(a)).

ployer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive such benefit.

ERISA § 3(7), 29 U.S.C. § 1002(7). The Supreme Court has construed "participant" to include former employees with "a colorable claim that [they] will prevail in a suit for benefits," since such individuals "may become eligible" for benefits within the meaning of the statute. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Moreover, "the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ... merits of plaintiffs' claim." *Astor v. International Business Machines Corp.*, 7 F.3d 533, 538 (6th Cir.1993); *accord Laniok v. Advisory Committee of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1364 (2d Cir.1991) (affirming district court's holding that allegations stated a colorable claim for benefits "regardless of the outcome of the instant action").

■ The Second Circuit has rejected a narrow interpretation of ERISA's standing requirement, noting that Congress' intent in enacting the statute was "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities ... or recovery of benefits due to participants." *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 668 (2d Cir.1994). In ruling that former employees who voluntarily retired due to misrepresentations by plan administrators could sue for severance benefits, the court held: "[T]he basic standing issue is whether the plaintiff is 'within the zone of interests ERISA was intended to protect.'" *Id.* (citation omitted); *see also Astor*, 7 F.3d at 538. Here, Plaintiff's claim that she is entitled to disability benefits that were wrongfully terminated by

Defendants is not frivolous and—given this Court's ruling that the complaint is not time-barred—is sufficiently colorable to confer participant status. *See Moriarity v. United Technologies Corp. Represented Employees Retirement Plan*, 947 F.Supp. 43, 49–50 (D.Conn.1996) (holding that former employee's allegations of entitlement to benefits from employee welfare plan "clearly fall 'within the zone of interests ERISA seeks to protect'"), *aff'd*, 158 F.3d 157 (2d Cir.1998).

■ Warnaco contends that even if Plaintiff has standing to sue for failure to disclose, her request for documents regarding "the basis for the termination of her disability benefits" were not subject to the disclosure requirement of 29 U.S.C. § 1024(b)(4). This section states as follows (in relevant part):

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

Neither party has addressed whether Plaintiff's request, though not specifically enumerated among the documents required to be disclosed under § 1024(b)(4), falls within the "other instruments" clause. The Second Circuit has narrowly interpreted this clause to include only "the formal legal documents that govern or confine a plan's operations, rather than the routine documents with which or by means of which a plan conducts its operations." *Board of Trustees of the CWA/ITU Negotiated Pension v. Weinstein*, 107 F.3d 139, 142 (2d Cir.1997). Since individual claims determination records do not fit within the former category, pursuant to *Weinstein* they are not covered by § 1024(b)(4).

Nonetheless, the motion to dismiss must be denied, since Plaintiff's request for "a current copy of the long term disability plan, including the claim and appeal proce-

dure," Complaint at ¶ 44, invoked a statutory disclosure duty. *Austin v. Ford,* No. 95 Civ. 3730, 1998 WL 88744, at *5 (S.D.N.Y. Mar.2, 1998) (request for copy of plan creates disclosure duty under § 1024(b)(4)); *see also Hughes Salaried Retirees Action Committee v. Administrator of Hughes Non–Bargaining Retirement Plan,* 72 F.3d 686, 690 (9th Cir.) (holding that required disclosures under § 1024(b)(4) include documents that "allow the participant to know ... what procedures he must follow to obtain benefits") (internal quotation marks and citation omitted), *cert. denied* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *accord Weinstein,* 107 F.3d at 144 (recognizing that primary goals of ERISA's disclosure requirement include "providing plan participants with more significant information about ... their rights and benefits [and] how those rights could be lost").[11]

### IV. *Claim for Failure to Retain Records*

The third cause of action alleges that Warnaco violated § 107 of ERISA by destroying Plaintiff's claims determination file, and seeks an order requiring that Warnaco maintain such records for at least six years in accordance with the statutory section. *See* 29 U.S.C. § 1027. Section 1027 provides that entities subject to ERISA's reporting and disclosure requirements must maintain for six years "records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data" with which to verify such reports or documents. *Id.* The statute further provides that records required to be maintained under this section "shall include vouchers, worksheets, receipts, and applicable resolutions." *Id.*

Warnaco first argues that this claim should be dismissed because ERISA does not provide a private cause of action for

violations of § 1027. In fact, the statute specifically provides that a civil action under ERISA § 502(a), 29 U.S.C. § 1132(a), may be brought:

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). Accordingly, as a participant of the Plan, Plaintiff may bring the present action for injunctive relief.

Warnaco additionally contends that § 1027 does not require the retention of claims review and denial records. The statute's non-exhaustive list of records required to be retained does not enumerate claims records, and the Court has found no cases addressing whether such records are covered by § 1027. In the absence of a regulation specifically defining the types of records required to be maintained under this provision, courts have often looked to ERISA's predecessor, the Welfare and Pension Plan Disclosure Act (WPPDA), Pub.L. No. 85–836, 72 Stat. 997 (1958) (codified at 29 U.S.C. §§ 301–09 (repealed 1974)), which included a nearly identical record retention provision at former § 308b that was construed in a Department of Labor interpretive bulletin. *See, e.g., United States v. Sarault,* 840 F.2d 1479, 1483–85 (9th Cir.1988) (holding that letter containing non-financial information was required to be retained under § 1027 based on reading of former 29 C.F.R. § 486.3); *Combs v. King,* 764 F.2d 818, 823–25 (11th Cir.1985) (relying on former regulation's provisions regarding types of documents subject to retention requirement); *United States v. S & Vee Cartage Co.,* 704 F.2d 914 (6th Cir.) (same), *cert.*

---

**11.** Defendants also assert that Plaintiff cannot show that she was prejudiced by the plan administrator's failure to disclose documents, and therefore cannot establish a basis for statutory penalties. The bases for this argument—that Plaintiff's benefits claim "had become stale" and that none of the documents requested were required to be disclosed—have already been rejected by this Court.

*denied,* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); 29 C.F.R. § 486 (removed 1985).

"Claims records" were among the items specifically enumerated by this regulation as records subject to the WPPDA's retention requirement. 29 C.F.R. § 486.3 (removed 1985). In addition, it broadly interpreted such records to include any other non-listed items that would "tend to support information required in any report under the [WPPDA]." *Id.; see Sarault,* 840 F.2d at 1484. This construction, rendered by an agency charged with administering the statute, would normally be given "considerable deference" unless contrary to clear congressional intent. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that courts may give effect to "permissible construction" of statute by administering agency where Congress "has not directly addressed the precise question at issue"); *Skandalis v. Rowe,* 14 F.3d 173, 178 (2d Cir.1994) (same).

■ One of the primary purposes behind the enactment of ERISA was an effort to broaden the information that had been made available to beneficiaries under the WPPDA and to address the former statute's "'inadequa[cy]' in 'protecting rights and benefits due to workers.'" *Weinstein,* 107 F.3d at 144 (quoting H.R.Rep. No. 93–533 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4642). Given that ERISA increased the information that had previously been required to be reported "both in scope and detail," 1974 U.S.C.C.A.N. at 4649, it would defy logic to conclude that Congress intended the statute to narrow the categories of records maintained in order to verify the accuracy of such disclosures. *Sarault,* 840 F.2d at 1484 (concluding that ERISA did not change preexisting requirement for retention of records); *S & Vee Cartage,* 704 F.2d at 917 (same). In addition, individual claims determination records are among the types of documents that can be used to verify or explain the expenditures of the Plan. Therefore, this Court concludes that claims records are subject to the record retention provision of § 1027.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim is hereby denied in its entirety.

SO ORDERED.