Marianne LOCHER, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.

No. 96CIV.3828 (LTS)(HPB).

United States District Court,
S.D. New York.

Jan. 16, 2001.

Koob & Magoolaghan, New York City by Elizabeth Koob, for Plaintiff.

Evan L. Gordon, New York City, for Defendant.

## OPINION AND ORDER

SWAIN, District Judge.

In this action, brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), to recover disability benefits allegedly denied improperly under an employee benefit plan, defendant UNUM Life Insurance Company of America ("UNUM") and plaintiff Marianne Locher ("Plaintiff" or "Locher") seek rulings *in limine* precluding the use of certain evidence at the non-jury trial of the action. UNUM seeks a determination restricting the evidence at trial to the record developed in administrative proceedings under the employee benefit plan. UNUM also argues that, even if the admissible evidence is not so restricted

under applicable law, the additional material proffered by Plaintiff should be excluded as irrelevant and/or incompetent. Locher opposes UNUM's attempt to preclude the introduction of additional evidence, and seeks an order precluding UNUM's use of prior testimony of one of the physicians consulted by Plaintiff.

The parties' respective applications are granted in part, denied in part and reserved for decision at trial, as set forth in detail below.

## BACKGROUND

This case arises out of UNUM's decision to deny disability benefits to Locher pursuant to an insurance policy providing benefits under a long-term disability plan maintained by Locher's former employer (the "Disability Plan"). The parties agree that the Disability Plan is governed by ERISA, 29 U.S.C. § 1001 *et seq.* (1997). Locher challenges UNUM's denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); she asserts claims pursuant to sections 1132(a)(3)[1] and 29 U.S.C. § 1132(g) for attorneys fees as well. The Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. §§ 1331, 2201 and 2202.

The parties' agreed statement of facts indicates that on or about July 28, 1993, Locher applied for benefits under the Disability Plan, claiming that she had ceased work on April 8, 1993, because she had by that point become disabled by Chronic Fatigue Syndrome ("CFS"). UNUM, which is both the insurer and the claims administrator under the Disability Plan, denied the claim. Locher thereafter appealed the denial pursuant to Disability Plan procedures; UNUM issued its decision upholding the original denial on March 4, 1994. UNUM's denial was based on its finding that Plaintiff had not established that she was disabled as of the date her employ-

---

1. The complaint and the parties' Proposed Joint Pre-Trial Order cite §§ 1132(a)(1)(B), (a)(3) and "(C)." The citation to subsection "(C)" appears to be a typographical error, since 29 U.S.C. § 1132(a)(3) does not contain a subsection "(C)" and there are no allegations in the complaint pertinent to section 1132(c) of the statute.

ment terminated. It is undisputed that UNUM's review of Locher's claim and appeal was performed entirely by persons, including physicians, employed by UNUM. *See* Reply Affidavit of Evan L. Gordon, sworn to October 3, 2000, Exhibit A (Defendant's Contentions, ¶¶ 10 through 15 and 17 through 22). Locher commenced this action on May 21, 1996. Information elicited in the course of discovery indicates that UNUM maintains no written procedures, other than the terms of the Disability Plan and the summary description of the terms of that plan, for evaluating and processing appeals. *See* Elizabeth Koob's Declaration Regarding Pre–Trial Issues, dated August 23, 2000, Exhibit 6 (Deposition of Sandy Kasserman, at 9).

Prior to the instant application, both parties had interposed summary judgment motions, which were denied. In denying the motions, the Court (Jones, J.) determined, *inter alia*, that UNUM's denial of benefits is subject to de novo review and that there were material questions of fact concerning whether Locher was disabled as of the relevant date within the meaning of the Disability Plan. *Locher v. UNUM*, 1999 WL 731428 (S.D.N.Y.1999) (*"Locher I"*).

UNUM seeks to limit the trial evidence to the record developed and considered in the course of the Disability Plan's administrative proceedings on Locher's claim. Locher contends that UNUM had a conflict of interest in reviewing her claim that, under applicable case law, warrants the Court's consideration of evidence outside the administrative record.

In addition, UNUM specifically objects to Plaintiff's proffers of her own live testimony; testimony and a report from Dr. Richard N. Podell, who examined Plaintiff and her medical records only within the past year and is tendered as an expert witness; testimony and reports from Dr.

Susan Levine, a physician whose reports were tendered in connection with the administrative proceedings[2]; and testimony from Cynthia D'Niaye, a former co-worker who would speak to her observations of Plaintiff's capabilities at the time of the termination of her employment. UNUM also objects to the admission of Plaintiff's Exhibits 3, 10 and 10.1 through 10.5, which are records of Locher's former employer, to extent such records were not part of the administrative record below; Exhibits 5 through 7, 12 and 13, which are medical reports allegedly prepared subsequent to the administrative proceedings below; Exhibit 4, a report prepared by the National Institutes of Health ("NIH") concerning chronic fatigue syndrome; Exhibit 14, consisting of correspondence from Dr. Levine that was submitted to UNUM in connection with disability applications by persons other than Plaintiff; and Exhibit 15, a document that Plaintiff asserts is a UNUM policy document concerning chronic fatigue syndrome.[3] UNUM asserts that the foregoing proposed additional evidence is not relevant or that it is not competent.

## DISCUSSION

*Evidentiary Scope of De Novo Review*

■ With respect to Plaintiff's entitlement to Disability Plan benefits, the issue that will be before the Court at trial of this action is whether Plaintiff was disabled, within the meaning of the applicable provisions of the Disability Plan, and therefore entitled to receive benefits under that plan, as of the date of termination of her employment. "[A] denial of benefits challenged under Section 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115,

---

2. Locher has not designated Dr. Levine as an expert witness.

3. UNUM alleges that the document is not an official UNUM document and that it was prepared by a former UNUM employee.

109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Disability Plan does not grant UNUM discretionary claims review authority. The de novo standard of review thus applies to this Court's consideration of Locher's entitlement to benefits under the Disability Plan. *Locher I*, at 3–4, 1999 WL 731428, at *1–2. The evidentiary scope of that review is a threshold question for this Court. UNUM contends that the Court should review only the record developed during the Disability Plan's administrative proceedings; Locher argues that she should be permitted to supplement the administrative record with evidence she contends is relevant to the disability determination.

■ In *DeFelice v. American International Life Assurance Company of New York*, 112 F.3d 61 (2d Cir.1997), the United States Court of Appeals for the Second Circuit held that, where de novo review of a decision rendered under an ERISA-governed plan is appropriate because the plan's decision maker did not have the requisite discretionary authority, the federal court has discretion to consider evidence outside the administrative record. Such discretion "ought not [, however,] to be exercised in the absence of good cause." *DeFelice*, 112 F.3d at 66. The *DeFelice* court held that a "demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." *DeFelice*, 112 F.3d at 67; *see also Parker v. Reliance Standard Life Insurance Co.*, 2000 WL 97362 at *2 (S.D.N.Y. Jan.27, 2000); *O'Rourke v. Pitney Bowes, Inc.*, 1997 WL 431091, at *6 n. 6 (S.D.N.Y. July 31, 1997) (noting that a district court may consider additional evidence where the decision maker is conflicted).

■ In *DeFelice*, the Second Circuit found such a conflict based on the fact that the administrative committee that had reviewed the claim at issue in that case "was comprised entirely of [the insurer's] employees—hardly a neutral decision-making body." *DeFelice*, 112 F.3d at 66. Where such a structural conflict exists, "the plain-

tiff need not demonstrate that the conflict caused her actual prejudice in order for the court to consider the conflict to be 'good cause.'" *Id.* at 67. The *DeFelice* court found aggravating factors as well:

> [S]everal members of [the insurer's review] Committee testified that there existed no established criteria for determining an appeal. To add insult to injury, the Committee apparently had a practice of destroying or discarding all records within minutes after hearing an appeal.

*Id.* at 66. The *DeFelice* court held that, "[u]pon remand, ... the district court should not limit its consideration to matters previously appraised in the administrative proceedings." *Id.* at 67.

When faced with the question of whether a plan administrator is conflicted within the meaning of *DeFelice*, courts have focused on whether the plan administrator both determines eligibility for benefits and pays the benefits itself, without reimbursement. *Parker v. Reliance Standard Life Insurance*, 2000 WL 97362 at *3; *Conners v. Connecticut General Life Insurance Company*, 1999 WL 1211831, at *3 (S.D.N.Y. Dec.16, 1999) (limiting review to the record where the employer, not the plan administrator, ultimately pays all amounts due under the plan, and finding that, therefore, there is no conflict of interest); *MacMillan v. Provident Mutual Life Insurance Company of Philadelphia*, 32 F.Supp.2d 600, 615 (W.D.N.Y.1999) (allowing plaintiff to submit additional evidence because defendant was conflicted in the same way as defendant in *DeFelice*—because the claims administrator paid the benefits, it had an obvious interest in denying benefits); *Janas v. Continental Casualty Company*, 1999 WL 31006, at *4 n. 1 (N.D.N.Y. Jan.15, 1999) (holding that plan administrator was operating under a conflict of interest where benefits would be paid directly by the plan administrator).

■ The parties agree that UNUM is responsible for payment of benefits to em-

ployees covered by the Disability Plan. *See* Proposed Joint Pre–Trial Order at ¶ 10. As noted above, it is undisputed that all of the persons involved in the initial and appellate review of Locher's claim under the Disability Plan were UNUM employees; it also appears that UNUM had no written procedures for claims review. Although UNUM's papers include a general argument, unsupported by any specific evidentiary proffer, that UNUM's need to maintain its market reputation as an insurer mitigates any conflict that might arise from its dual claims reviewer/payor status, it has offered nothing to support a departure from the governing analysis in this Circuit—that there is a structural conflict where a claims administrator is also the claims payor, and that such a conflict constitutes "good cause" for the consideration of evidence in addition to that introduced in the administrative proceeding. *DeFelice*, 112 F.3d at 67.

UNUM is a conflicted administrator within the meaning of *DeFelice*. UNUM's conflict of interest is per se "good cause" for allowing additional evidence at trial. There is no requirement that Plaintiff show more. *See De Felice*, 112 F.3d at 67 (plaintiff need not show that conflict caused actual prejudice); *Parker v. Reliance Standard Life Insurance*, 2000 WL 97362 at *3 (conflict of interest is per se "good cause," there is no requirement that plaintiff also show other factors such as inability to develop fully the administrative record).

Accordingly, the Court denies UNUM's application in limine to the extent it seeks to limit de novo review of the denial of benefits to the administrative record.

*UNUM's Objections to Specific Evidentiary Proffers*

UNUM also argues that the additional evidence proffered by the Plaintiff is irrelevant, and/or that Locher has not made an offer of proof sufficient to support a finding of relevance. Rule 401 of the Federal Rules of Evidence provides: " 'Relevant evidence' means evidence having any ten-

dency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *Malek v. Federal Insurance Co.*, 994 F.2d 49, 53 (2d Cir.1993). As a general rule, "[a]ll relevant evidence is admissible." Fed.R.Evid. 402.

Under the Disability Plan, disability benefits were payable upon proof that an insured was disabled due to sickness or injury and required the regular attendance of a physician. *See* UNUM's Motion for Summary Judgment, Exhibit A (Disability Plan, Section IV). Disability was defined under the policy as follows: " 'Disability' ... mean[s] that because of injury or sickness the insured cannot perform each of the material duties of his regular occupation." *See* UNUM's Motion for Summary Judgment, Exhibit A (Disability Plan, Section II). Disability Plan coverage terminates on the date the covered employment terminates. *See* UNUM's Motion for Summary Judgment, Exhibit A (Disability Plan, Section V).

Here, the issue to be decided at trial is whether Plaintiff suffered from injury or sickness that rendered her unable to perform "each of the material duties of her occupation" prior to the date of her termination of employment. *See Locher I*, at 4, 1999 WL 731428, at *2. Accordingly, evidence having a tendency to make the existence of the fact that the Plaintiff was unable, due to injury or sickness, to perform the material duties of her occupation as of the time of termination of her employment more or less probable than it would be without the evidence is relevant. Fed R. Evid. 401.

■ The de novo standard for review of the disability question puts the Court in the position of a "substitute plan administrator," given UNUM's conflicted stance as prior decision maker. *See DeFelice*, 112 F.3d at 66. The issue is thus whether Plaintiff was entitled, under the terms of the Disability Plan, to benefits at the time she applied, rather than whether UNUM

exercised appropriately its decision-making authority under the Disability Plan. *See generally, DeFelice; cf. Bruch,* 489 U.S. at 112–113, 109 S.Ct. 948.

With these principles in mind, the Court makes the following determinations concerning the objections interposed by UNUM.

### 1. *Testimony and Report of Dr. Podell*

Plaintiff proffers the testimony of Dr. Richard N. Podell, as an expert witness, as to Plaintiff's ongoing disability; her disability as of the date of her claim; the sufficiency of the disability evidence proffered in the administrative proceedings; and the credibility of the opinions of UNUM's physicians. UNUM contends that Dr. Podell's testimony is irrelevant because he did not examine Plaintiff until seven years after Plaintiff allegedly became disabled. UNUM further argues that, because Dr. Podell's report presumes the accuracy of certain factual representations as to Plaintiff's condition contained in earlier communications from Plaintiff's treating physician, which representations are challenged by UNUM, that Dr. Podell's opinion should be excluded as "incompetent" because it amounts to a determination of the credibility of Plaintiff's treating physician.

■ The issue to be determined by the Court at trial is whether Plaintiff was disabled within the meaning of the relevant plan provisions as of the date of termination of her employment. In making this determination, the Court sits in de novo review as a "substitute [plan] administrato[r]." *DeFelice,* 112 F.3d at 66. "In this situation, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case." *Id.* Dr. Podell's report concerning Locher's alleged disability arising from CFS is based, among other things, upon his evaluation of a treating physician's contempora-

neous assessment and a February 29, 2000 examination of Locher. Aside from a throwaway reference to "junk science" and the Supreme Court's *Daubert* decision,[4] UNUM has not as yet proffered anything to refute the representation that Dr. Podell's is an appropriate scientific method. UNUM's bald assertion that a subsequent examination can never be probative as to the existence of a condition on a prior date is plainly overbroad. UNUM's objection is overruled to the extent it is based solely on Dr. Podell's after-the-fact relationship with Plaintiff.

The factual basis of the opinion, and the witness's relationship (in time and treatment) to the subject of the report are factors that go to the weight, not the relevance, of this evidence.

The basis of UNUM's assertion that the evidence proffered by Dr. Podell is incompetent is not clear. Rule 601 of the Federal Rules of Evidence establishes the general principle that "[e]very person is competent to be a witness except as otherwise provided in these rules." UNUM cites no provision of the Rules in support of its assertion of incompetence; Rule 703 permits an expert to base his opinion or inference on facts or data "perceived by or made known to the expert at or before the hearing." Fed.R.Evid. 703. UNUM's application to preclude the evidence as incompetent is denied.

■ UNUM's objection is also overruled to the extent it seeks to preclude Dr. Podell's commentary on the assessments by UNUM's physicians. Assuming that UNUM offers such evidence at trial and that Dr. Podell is tendered and qualified appropriately as an expert, Dr. Podell's assessment of the veracity of the medical evidence offered by UNUM will be rele-

---

**4.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125

L.Ed.2d 469 (1993).

vant. *Cf. Locher I*, at 6, 1999 WL 731428, at *2.

█ To the extent, however, that Plaintiff proffers Dr. Podell's testimony to establish that Plaintiff is currently disabled (as distinguished from whether she suffered from such disability as of the termination of her employment), the evidence is irrelevant, in that the issue of current disability is not before the Court.

### 2. Cynthia D'Niaye; Employment Records

█ Plaintiff seeks to introduce the testimony of Cynthia D'Niaye, a former co-worker of the Plaintiff, as well as Plaintiff's employer's business records concerning her employment. Locher represents that D'Niaye would testify as to her observations of Locher's condition during the period leading up to termination of her employment. Under the terms of the Disability Plan, benefits are payable only if the relevant illness or injury renders a person unable to perform the material aspects of the relevant employment. Although D'Niaye, as a lay witness, is clearly incompetent to diagnose the etiology of any physical difficulties she may allegedly have observed, her testimony as to her personal observations is not clearly irrelevant to the question of Plaintiff's capabilities at the pertinent time. The Court denies UNUM's application to preclude such testimony, without prejudice to UNUM's ability to object at trial, *inter alia*, on grounds of cumulativeness and to argue the weight of the proffered evidence.

█ Plaintiff's employer's business records pertaining to her employment history (Exhibits 3, 10 and 10.1 through 10.5) are similarly relevant to the extent they tend to show whether Plaintiff was able or unable to perform her material job duties. UNUM's blanket application to preclude their introduction into evidence is denied.

### 3. Plaintiff's Testimony

█ Plaintiff seeks to testify on her own behalf. To the extent such testimony tends to establish that Plaintiff was able or unable to perform her job at the time she resigned, her testimony is relevant. UNUM's application to preclude all such testimony on relevance grounds is denied.

### 4. Medical Reports and Records Concerning Subsequent Condition

█ Plaintiff seeks to introduce medical reports and records of her condition subsequent to the evaluation of her Disability Plan claim. To the extent such records speak solely to Plaintiff's condition subsequent to the termination of her employment and are offered to prove disability status for periods subsequent to such termination, UNUM's application to preclude is granted. To the extent such records are proffered to establish disability as of the date of termination of employment they are not clearly irrelevant, and UNUM's application is denied.

### 5. Reports and/or Testimony of Dr. Susan Levine

#### a. Evidence Concerning Plaintiff

█ UNUM seeks to preclude the introduction of evidence from Dr. Levine, whose reports were considered in the administrative process, arguing that such evidence is irrelevant or incompetent because Dr. Levine first examined Plaintiff after Plaintiff's employment had already terminated.[5] For substantially the reasons set

5. UNUM, by letter dated October 29, 2000, further objected to the admission of evidence from Dr. Levine because Dr. Levine's license to practice medicine had been suspended for three years by the State Board for Professional Medical Conduct. UNUM complained that Plaintiff had misrepresented Dr. Levine's qualifications and requested sanctions. Plaintiff responded by letter dated November 2, 2000, asserting that Dr. Levine's suspension resulted from her failure to maintain adequate patient records, but that Dr. Levine's credentials as an expert in CFS were unchallenged. The Court declines to entertain UNUM's request for sanctions absent a procedurally appropriate application. As indicated herein, UNUM's assertions as to the "competence" of Dr. Levine's evidence go to the weight accorded such evidence. Moreover, if Dr. Levine testifies, UNUM is free to

forth above in connection with the proffer of Dr. Podell's testimony, UNUM's broad relevance objection is overruled.

### b. *Reports Concerning Other Individuals (Exhibit 14)*

Plaintiff's exhibit list also includes a group of documents, purportedly produced by UNUM in response to discovery requests, consisting of letters written by Dr. Levine in support of other individuals' applications to UNUM for disability benefits. Plaintiff contends that the material is relevant because one of the UNUM physicians who evaluated her claim expressed the view that Dr. Levine's report was not entitled to weight because it was similar to reports submitted in support of other applications. The Court reserves for trial the consideration of any proffer and/or objections with respect to this exhibit.

### 6. *NIH Report*

Plaintiff seeks to introduce a report by the National Institute of Health entitled "Chronic Fatigue Syndrome." (Exhibit 4). Apparently, Plaintiff wants to introduce the report to buttress the credibility of Dr. Susan Levine, who may or may not testify at trial, and/or to rebut certain assumptions allegedly made by UNUM's physicians about Dr. Levine's evaluations in the course of the claims review process. Any determination as to the propriety of the proffer for the former purpose is reserved for trial. With respect to the latter, the parties are reminded that the issue on de novo review is not the propriety of the decision by UNUM but, rather, whether Plaintiff was disabled within the meaning of the Disability Plan at the time her employment terminated. Any determination as to the propriety of the proffer in connection with the evaluation of UNUM's evidence is also reserved for trial.

### 7. *"UNUM" CFS Document*

Plaintiff seeks to introduce a report allegedly prepared by a UNUM employee cross-examine Dr. Levine concerning her cre-

(Exhibit 15), for the purpose of demonstrating an institutional bias on UNUM's part with respect to the evaluation of CFS claims. UNUM asserts that the report was never officially adopted by UNUM. The Court need not reach at this juncture the question of whether the report can be held against UNUM because, as explained above, the issue for de novo review at trial is whether plaintiff was disabled at the time her employment terminated, not whether UNUM's decision in that regard was correct or, indeed, whether it was reached through a correct process. UNUM's application to preclude introduction of the document on the question of disability is granted. *Plaintiff's Objection to Defendant's Proffer of Testimony of Dr. Levine in Another Trial*

UNUM lists as a proposed exhibit the transcript of trial testimony of Dr. Levine in *Poltrak v. Providential,* 96 Civ. 1678 (S.D.N.Y.1998) (Exhibit E). Plaintiff objects, arguing that such testimony is hearsay, the introduction of which is precluded by Rule 804(b)(1) of the Federal Rules of Evidence. Rule 804(b)(1) deals with former testimony of a witness only where the witness is unavailable for trial. UNUM asserts that it seeks to introduce the evidence only in connection with cross-examination in the event Dr. Levine testifies at trial, and that it relies on Rule 608 of the Federal Rules of Evidence as authority for such use. *See* UNUM's Reply Memorandum of Law, at 8. The Court reserves for trial any determination as to the admissibility of the prior testimony under Rule 608. The Court notes in this connection, however, that Rule 608 precludes the use of extrinsic evidence to impeach a witness with instances of specific non-criminal conduct. Fed.R.Evid. 608(b).

### SUMMARY OF CONCLUSIONS

For the reasons stated above:

1. UNUM's application to restrict the evidence at trial to the record developed...

dentials.

oped in the administrative proceedings under the Disability Plan is denied.

2. UNUM's application to preclude the introduction of evidence from Dr. Podell is denied to the extent such evidence is offered for the purpose of establishing a disability as of the date of termination of employment or to challenge medical evidence proffered by UNUM. UNUM's application is granted to the extent the evidence is proffered solely to establish the existence of a disability subsequent to the termination of plaintiff's employment.

3. UNUM's application to preclude introduction of the testimony of Cynthia D'Niaye, Plaintiff's own testimony, and records relating to Plaintiff's employment (Exhibits 3, 10 and 10.1 through 10.5) is denied to the extent such evidence is proffered to establish Plaintiff's ability to perform her job duties at the time Plaintiff's employment terminated.

4. UNUM's application to preclude the introduction of certain medical reports and records (Exhibits 5 though 7, 12 and 13) solely for the purpose of establishing disability status for periods subsequent to the termination of Plaintiff's employment is granted. The application is denied to the extent such records are proffered to prove disability as of the time of termination of employment.

5. UNUM's application to preclude as irrelevant all evidence from Dr. Levine concerning Plaintiff's condition is denied. The Court reserves for trial any determination concerning the proffer of Exhibit 14, consisting of reports by Dr. Levine concerning other individuals' disability benefit applications.

6. The Court reserves for trial any determination as to the propriety of the admission of Exhibit 4 (the NIH Report).

7. UNUM's application to preclude introduction of Exhibit 15 (a report allegedly prepared by UNUM) in connection with the de novo review of Plaintiff's claim of disability as of the date her employment terminated is granted.

8. The Court reserves for trial any determination as to the propriety of the admission of proposed Exhibit E (testimony of Dr. Susan Levine at trial of *Poltrak v. Provident,* 96 Civ. 1678).

IT IS SO ORDERED.