Russell P. MEDOY, as Administrator
of the Estate of Audrey Medoy,
Plaintiff,

v.

WARNACO EMPLOYEES' LONG
TERM DISABILITY INSURANCE
PLAN and Warnaco, Inc., as Adminis-
trator of the Warnaco Employees'
Long Term Disability Plan, Defen-
dants.

No. 97–CV–6612 (RRM)(JMA).

United States District Court,
E.D. New York.

Sept. 30, 2008.

Edgar Pauk, New York, NY, for Plaintiff.

Peter Arnold Walker, Seyfarth Shaw, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

MAUSKOPF, District Judge.

Russell P. Medoy ("Plaintiff"), Administrator of the Estate of Audrey Medoy ("Medoy"), commenced this action against the Warnaco Employees' Long Term Disability Insurance Plan (the "Plan") and Warnaco, Inc. ("Warnaco"), as administrator of the Plan (collectively, "Defendants"), challenging the termination of Medoy's long-term disability benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1132(a)(1)(B). Currently before the Court are Plaintiff's and Defendants' Cross–Motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' Motion is DENIED and Plaintiff's Motion is GRANTED.

## I.

### BACKGROUND

The factual background and procedural history of this case have been set forth in prior decisions issued by our predecessor Court (Johnson, J.), see, e.g., Medoy v. Warnaco Employees' Long Term Disability Ins. Plan, No. 97 CV 6612(SJ), 2005 WL 3775953, at *1–3, 2005 U.S. Dist. LEXIS 40631, at *2–8 (E.D.N.Y. Dec. 24, 2005) ("Medoy II"); Medoy v. Warnaco Employees' Long Term Disability Ins. Plan, 43 F.Supp.2d 303, 304–06 (E.D.N.Y. 1999) ("Medoy I"), and will only be summarized for purposes of this Memorandum and Order. The following facts are taken from the parties' affirmations, Local Rule 56.1 statements and the documents attached thereto. Disputes are noted.

Medoy was employed by the White Stag Corporation, later acquired by Warnaco, from August 13, 1979 to February 13, 1983, when she stopped working due to the onset of Crohn's disease. On August 3, 1983, Medoy filed an application for long-term disability benefits with the Plan, which was insured by CIGNA Group Insurance/Life Insurance Company of North America ("CIGNA" or "LINA"). On June 25, 1984, Medoy was granted benefits on a retroactive basis to August 13, 1983.[1]

In August 1987, Medoy's benefits were terminated as a result of a series of letters exchanged in 1986 and 1987 between CIGNA and Medoy's treating physician, Dr. Lloyd F. Mayer, M.D. During that period, CIGNA sent Dr. Mayer numerous requests for updates on Medoy's status and prognosis. In approximately January 1986, Dr. Mayer reported to CIGNA that Medoy was "recovering from her 3rd operation (closure of loop ileostomy)"[2] and that he expected her to remain totally disabled

---

1. Medoy's long-term disability policy included coverage for disability within her "own occupation" for up to two years, together with a provision for payments to continue beyond two years if the covered party were "unable to engage in any substantially gainful occupation." See Warnaco Employees' Long Term Disability Insurance Plan, Plaintiff Ex. 75 (emphasis added).

2. An ileostomy is the surgical creation of an opening through the abdomen into the small intestine. An ileostomy bag is connected, into which fecal matter is directed from the rectum. See Mackinaw v. Bowen, 866 F.2d 1023, 1023 n. 3 (8th Cir.1989).

for "3–6 months." In January 1987, Dr. Mayer provided another update, reporting to CIGNA that Medoy's status was "post subtotal proctocolectomy"[3] and that Medoy had been "recently admitted with fevers of 103, severe diarrhea, nausea and vomiting." Nevertheless, Dr. Mayer reported that Medoy was "improving, although she continue[d] to require medications to control her diarrhea and pain." Dr. Mayer added that Medoy was "looking to be re-employed" and he "anticipate[d that] within a short matter of a few months she [would] be fully functional."

The event that triggered the termination of Medoy's benefits was Dr. Mayer's letter to CIGNA dated May 15, 1987, which read:

> Dear Ms. Baker:
> Thank you for your letter of May 7, 1987 with regard to Audrey Medoy. She is continuing clinicial [sic] improvement and I fully expect that by September 1, 1987 she will be able to resume work. I would not think that there could be any situation that would occur to prevent her from going back to work at that time. Thank you very much. If there are any other questions, please don't hesitate to call me.

Based on this letter, on August 18, 1987, CIGNA wrote to Medoy and informed her that the company would "process benefits through August 31, 1987, as Dr. Mayer [was] releasing [her] to return to work September 1, 1987." Medoy showed this letter to Dr. Mayer, who then "called CIGNA on her behalf in an attempt to have her benefits reinstated.... Dr. Mayer informed CIGNA that his diagnosis of Medoy's condition had changed, and that she was 'totally disabled.'" *See* Defendants' April 7, 2000 Rule 56.1 Statement at ¶¶ 7–

8. On or about August 31, 1987, the Plan discontinued benefit payments to Medoy.

Medoy did not appeal the termination of her benefits immediately; however, Judge Johnson excused this omission for statute of limitations purposes because Medoy was not adequately informed of her right to appeal and submit additional evidence of disability. *See Medoy II,* 2005 WL 3775953, at *7–8, 2005 U.S. Dist. LEXIS 40631, at *24–25. On July 22, 1993, Medoy wrote to Warnaco, through counsel, seeking resumption of her long-term disability benefits and requesting an explanation for their prior termination. Thereafter, Medoy's counsel exchanged numerous letters with Warnaco, through which Medoy (1) delivered to Warnaco copies of Social Security Administration decisions finding Medoy disabled, (2) sought copies of Warnaco's records pertaining to Medoy's claim, and (3) demanded resumption of benefits. Warnaco, for its part, explained that it was unable to locate records pertaining to Medoy, and sought the relevant information from CIGNA.

Although CIGNA searched its storage facilities, it was unable to locate Medoy's records. CIGNA indicated that the Medoy file appeared to have been destroyed, and that its document retention policy called for the maintenance of closed files for a period of five (5) years. CIGNA therefore could not at that time articulate the reason for its termination of Medoy's benefits, although a July 16, 1994 letter from CIGNA to Warnaco stated that CIGNA could "only presume that a denial was written because Ms. Medoy may not have been considered totally disabled at that time under the contract."[4]

---

3. A proctocolectomy is the removal of the colon. *See Bettis v. Dep't of Human Servs.,* 70 F.Supp.2d 865, 865 n. 1 (C.D.Ill.1999).

4. CIGNA reiterated that determination in a July 31, 1995 letter to Medoy's counsel, stating that "Medoy's disability benefits appear to have been terminated for not meeting the continued requirements" of the Plan.

After receiving no response from Warnaco to repeated requests for a resumption of long-term disability benefits, Medoy filed this action on November 12, 1997. In April 1999, Judge Johnson denied Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Medoy I*, 43 F.Supp.2d at 312. On December 19, 2000, Medoy passed away, and Plaintiff, as Administrator of Medoy's Estate, assumed Medoy's place in this litigation. In December 2005, Judge Johnson granted in part and denied in part Defendants' first motion for summary judgment, preserving Plaintiff's claim of wrongful termination of benefits under Section 502 of ERISA and dismissing Plaintiff's remaining claims. *Medoy II*, 2005 WL 3775953, at *12, 2005 U.S. Dist. LEXIS 40631, at *40. Thereafter, Plaintiff moved for reconsideration of the Court's ruling, which Judge Johnson denied in February 2006. *Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, No. 97 CV 6612(SJ), 2006 WL 355137, at *5–6, 2006 U.S. Dist. LEXIS 7635, at *17 (E.D.N.Y. Feb. 14, 2006) ("*Medoy III*").

Plaintiff and Defendants filed their Cross–Motions for summary judgment on November 16, 2007. The case was reassigned to the undersigned on January 3, 2008.

## II.

### APPLICABLE LAW

#### A. Summary judgment standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

A district court may properly consider a challenge under ERISA to the termination or denial of disability benefits in the context of a summary judgment motion reviewing the administrative record. *See, e.g., Suarato v. Bldg. Servs. 32BJ Pension Fund*, 554 F.Supp.2d 399, 414–15 (S.D.N.Y.2008) (collecting cases).

#### B. Standard of review

Section 502(a) of ERISA, codified at 29 U.S.C. § 1132(a), authorizes a beneficiary of an employment benefit plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the Supreme Court has explained, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the [plan] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The parties agree that the Plan in question

here did not include such a grant of discretionary authority. As such, the Court agrees with the parties that it must review the termination of Medoy's benefits *de novo*.

### C. Scope of review

The Second Circuit has explained that the "presumption" to be applied by district courts in ERISA cases " 'is that judicial review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.' " *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (*quoting DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 67 (2d Cir.1997)). A court may look outside the administrative record in certain cases, however, such as when reviewing certain issues of plan interpretation, *Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 103–05 (2d Cir.1991), or when the administrative body that reviewed a claim was tainted by a conflict of interest, *DeFelice*, 112 F.3d at 66–67. Nevertheless, the Second Circuit has declined to endorse a broader holding that would allow a reviewing court to consider evidence outside the administrative record in weighing *any* factual issue under a *de novo* standard of review. *Id.* at 65–66 (acknowledging but not deciding "the issue preserved in *Masella*," *i.e.*, "whether additional evidence may be considered upon *de novo* review of factual issues").

█ Plaintiff argues that the Court's *de novo* review in this case is limited to the administrative record. *See* Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment (Docket No. 110) at 3. Defendants, on the other hand, argue that the Court's review extends to "those medical records which are likely to show whether or not Medoy was disabled when LINA issued its denial." *See* Defendants' Memorandum in Support of Defendants' Cross–Motion for Summary Judgment (Docket No. 115) at 5. Defendants take this position in an attempt to introduce documents that they obtained "[t]hrough the course of this litigation," *id.* at 3, which Defendants offer as evidence that Medoy was not disabled at the time her benefits were terminated.

In support of this interpretation of the scope of review governing Section 502 actions, Defendants cite to the district court's decision in *Locher v. UNUM Life Ins. Co. of Am.*, 126 F.Supp.2d 769 (S.D.N.Y.2001), *aff'd*, 389 F.3d 288 (2d Cir. 2004). *Locher*, however, does not stand for the broad proposition, asserted here by Defendants, that the scope of review includes "those medical records which are likely to show whether or not [the employee] was disabled" at the time of the adverse determination. Instead, *Locher* addressed the familiar scenario in which a conflicted claims administrator was deemed "good cause" for admitting evidence outside the administrative record. *Locher*, 126 F.Supp.2d at 774.

Defendants make no attempt to argue why this case presents "good cause" for the Court to consider evidence beyond the administrative record. The purpose of the rule discussed in *Locher* is to ensure that a conflicted claims administrator does not deny a claimant the opportunity to present relevant evidence demonstrating the latter's entitlement to benefits. Its purpose is *not* to permit an employer or claims administrator to introduce additional evidence that it did not consider in making its benefits determination, but through which it hopes to justify that determination *in hindsight*. In any event, as discussed more fully below, were the Court to consider additional evidence according to Defendants' proposed standard, the result would be the same.[5]

---

**5.** It is puzzling that Defendants would even wish the Court to expand the record along

■ Nor is the fact that Medoy's file was evidently destroyed an impediment to the Court's review. The administrative record "consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 300 (5th Cir.1999).[6] According to the parties' Rule 56.1 Statements and Counterstatements, there is no dispute regarding the evidence that CIGNA considered in reviewing Medoy's claim. That evidence includes: (1) Medoy's initial application for benefits, on which basis CIGNA paid disability benefits for more than four years (*see* Plaintiff's Rule 56.1 Statement at ¶ 8, admitted by Defendants); (2) the three status reports provided by Dr. Mayer (*see* Plaintiff's Rule 56.1 Statement at ¶¶ 12–14, admitted by Defendants); (3) Dr. Mayer's phone call to CIGNA, made after CIGNA informed Medoy of its decision to terminate benefits, in which he informed CIGNA that Medoy remained totally disabled (*see* Defendants' April 7, 2000 Rule 56.1 Statement at ¶ 8); and (4) the Social Security Administration's findings of disability dated October 3, 1989 and December 31, 1990, which Medoy's counsel forwarded to Warnaco in 1993 (*see* Plaintiff's Rule 56.1 Statement at ¶¶ 22–27, admitted by Defendants). Indeed, Defendants made clear the basis for the decision to terminate Medoy's benefits: "The basic [sic] for LINA's adverse benefit determination was that her treating physician was "releasing [her] to return to work September 1,

1987." *See* Docket No. 115 at 6 (quoting from CIGNA's letter to Medoy dated August 18, 1987).

## III.

### DISCUSSION

■ Reviewing *de novo* the adverse benefit determination at issue, the Court readily concludes that both the decision to terminate Medoy's benefits and the final denial of her claim were erroneous.

Total disability under the Medoy's policy is defined as the "inability of the individual to engage in any substantial gainful occupation for which he is qualified or may reasonably become qualified." *See* Defendants' Rule 56.1 Statement at ¶ 4. Pursuant to the terms of the policy, for a claimant to be eligible for benefits after the first two years of disability, the claimant must meet this "any occupation" standard rather than the more lenient "own occupation" standard. *See* note 1, *supra.* Medoy received benefits for a period of more than four years, which, according to Plaintiff, demonstrates that Defendants deemed Medoy eligible for "any occupation" benefits. Although Defendants fault Plaintiff for listing as an undisputed "fact" the conclusion that Medoy was found eligible for "any occupation" benefits, nowhere in their motion papers do Defendants attempt to controvert Plaintiff's reasoning or conclusion on this issue. The Court agrees with Plaintiff's uncontested argument that, having paid benefits to Medoy for more than four years, Defendants necessarily deter-

---

these lines, as both parties have submitted evidence from outside the administrative record, and, as discussed *infra*, Plaintiff's evidence is far more compelling.

**6.** *See also Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 511 (6th Cir.2005) (the administrative record consists of all information submitted to the fiduciary before the final denial); *accord Flinders*

*v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007) (*citing Kalish*); *Allison v. UNUM Life Ins. Co.*, No. CV 04–0025(JS)(WDW), 2005 WL 1457636, at *9, 2005 U.S. Dist. LEXIS 3465, at *26 (E.D.N.Y. Feb. 11, 2005) (the "administrative record properly consists of the evidence before the entity that decided the claim when that decision was rendered.").

mined that Medoy met the policy requirements for "any occupation" disability benefits.

The primary basis for terminating Medoy's benefits in 1987 was Dr. Mayer's May 15, 1987 letter, the significance of which has been vigorously debated by the parties. Defendants have characterized this letter as a "diagnosis" of non-disability, *see* Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 121) at 5, and as an act of "releasing [Medoy] to work [effective] September 1, 1987," *see* CIGNA's August 18, 1987 letter to Medoy. Plaintiffs, however, insist that this was merely a "prognosis" conveying Dr. Mayer's "*expectation,* not a statement of present fact." *See* Docket No. 110 at 11 (emphasis in original).

The Court agrees with Plaintiff. The fact that Dr. Mayer expected in May 1987 that Medoy would continue improving to the point where she would be able to resume work the following September was an improper basis on which to terminate her benefits at the end of August. Dr. Mayer's expectation in May was not evidence of the *actual cessation* of Medoy's disability in September, just as a prediction that Medoy had six months left to live would not have been evidence that Medoy *actually died* six months later. The Court employs this analogy to underscore the simple point that a prediction is not self-proving—one must wait to see whether the prediction proves correct before crediting it.

The flaw in Defendants' approach is well demonstrated here, as Dr. Mayer unequiv-ocally stated that his expectation proved wrong. Defendants have never addressed why they ignored Dr. Mayer's phone calls informing them that, contrary to his earlier expectation, Medoy remained totally disabled. They have not argued, for example, that CIGNA rejected Dr. Mayer's opinion based on other evidence indicating that Medoy was not disabled. As Defendants do not even proffer a rational basis on which they concluded that Medoy was no longer disabled in September 1987, the decision to terminate Medoy's benefits cannot withstand scrutiny. Reviewing *de novo* that decision, the Court finds that Plaintiff is clearly entitled to relief.[7]

Finally, as alluded to above, the Court's conclusion would only be strengthened were the Court to expand its review, as Defendants urge, to include any evidence "likely to show whether or not Medoy was disabled when CIGNA issued its denial." Defendants have cherry picked four documents from Medoy's voluminous medical records in an attempt to retrospectively justify the termination of Medoy's benefits in August 1987. Defendants describe those documents on Page 7 of their Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, and the Court will not discuss them further except to note that it finds them thoroughly unimpressive. The common thread linking all four of these exhibits is that none of them purports to assess Medoy's ability to engage in gainful employment, or even a remotely similar issue. Given that Medoy's ability to work is the very heart of benefits determination at issue in this case,

---

**7.** This finding draws further support from the Social Security Administration's decisions dated October 3, 1989 and December 31, 1990, both of which found Medoy disabled. Although the findings of the Social Security Administration were not binding on CIGNA, and although the definition of "disability" un-der the Policy differs from that which guided the Social Security Administration, the latter's decisions addressed Medoy's capacity to engage in gainful employment and were probative of disability under Medoy's Policy. *See Paese v. Hartford Life & Accident Ins. Co.,* 449 F.3d 435, 442 (2d Cir.2006).

the evidentiary value of these exhibits is *de minimis.*

Equally problematic to Defendants' position is the fact that Plaintiff, too, has produced evidence that the Court would have to consider under Defendants' proposed standard of "likely to show whether or not Medoy was disabled." The Court notes in particular Exhibits 2, 3, 20, 23, 25, 28, 71 and 72 attached to the Affirmation submitted in support of Plaintiff's Motion for summary judgment. These documents, unlike those championed by Defendants, were prepared by physicians who had longstanding treatment relationships with Medoy and whose findings and opinions bear directly on the existence of "total disability" under the policy. Exhibit 71, for example, is a letter from Dr. Mayer, dated November 4, 2006, which reads as follows:

> I am writing in reference to the case of Audrey Medoy, a patient of mine from 1985–1992. Following a subtotal colectomy for her Crohn's disease, I had written a letter that stated that I anticipated that she would be able to return to work in September 1987. This prediction proved to be incorrect in that her Crohn's disease recurred and she became symptomatic again in September 1987. This recurrence was confirmed endoscopically and responded poorly to conventional medications. Ms. Medoy was in a small subgroup of patients who develop rapid recurrence. There is no way (especially in 1987) to predict who will be in this rapid recurrence group. Please make the appropriate allowances.

In addition, Plaintiff submitted a December 2006 letter from Dr. August Feola, M.D., one of Medoy's treating physicians from 1990 until Medoy's death in 2000. That letter included the following information:

> Ms. Medoy suffered from severe, chronic, and progressive illness, with multiple complications and hospitalizations. At the top of her multitude of medical problems, was Crohn's disease. She had a rare and severe subtype of the disease which is manifested by severe skin involvement called Pyoderma gangrenosa. In time, the disease progresses and affects all internal organs with subsequent multisystem failure.

> She suffered multiple complications including small bowel perforations, peritonitis, and suffered the indignity of an ileostomy. At the end of her life, she also developed renal failure and succumbed. . . .

> Several years after her death in December, 2000, I was contacted by her estate attorney, who informed me she had received long term disability benefits from 1983 to 1987. I was surprised to learn she was not [deemed] disabled during my tenure as her physician. *She was clearly disabled throughout these years,* and it puzzles me how she survived financially during this period. *There clearly was no possible way Ms. Medoy could be gainfully employed during this time. . . .*

> *I hereby certify that Ms. Medoy was medically disabled from my first encounter with her in 1990 until her death on December 19, 2000.*

Plaintiff's Exhibit 72 (emphasis added). These documents underscore why terminating a claimant's benefits based exclusively on a prediction of future events is simply wrong.

The last sentence of Defendants' Memorandum of Law reads: "By 1992 the root cause of Medoy's 'problems' was psychiatric." Docket No. 115 at 7–8. In light of Dr. Feola's letter, and particularly her explanation of Medoy's unfortunate demise, is would be charitable to call that statement a mischaracterization. Considering *de novo* all of the information possessed

by the claims administrator at the time of termination, with or without the evidentiary record developed since that time, Plaintiff has clearly demonstrated that the termination of Medoy's benefits was improper.

## IV.

### *REMEDY*

■ Having found that the termination of Medoy's long-term disability benefits was erroneous, the Court must determine the appropriate form of relief in this case. Plaintiff asks the Court to grant equitable relief in the form of retroactive benefits from the date of the erroneous termination of benefits through the date of Medoy's death. Plaintiff advances three main arguments in support if its position: (1) Defendants waived their right to investigate Medoy's disability; (2) Defendants should be judicially estopped from rejecting the Social Security Administration's finding of disability; and (3) remand is inappropriate where "the difficulty is not that the administrative record was incomplete, but that the denial of benefits based on the record was unreasonable," *Zuckerbrod v. Phoenix Mut.*, 78 F.3d 46, 51 n. 4 (2d Cir.1996).

Although Defendants' Memorandum of Law in Opposition to Plaintiff's Motion contests Plaintiff's arguments concerning judicial estoppel and waiver, it does not directly address Plaintiff's argument concerning the relative appropriateness of reinstatement and remand. In the Court's view, however, this last issue is crucial in assessing the proper remedy in this case. Although Defendants did not ask the Court to remand Medoy's claim to the claims administrator, the Court would have rejected any such request. As the Second Circuit explained in *Zervos v. Verizon N.Y.*, 277 F.3d 635 (2d Cir.2002):

> [R]emand of an ERISA action seeking benefits is inappropriate 'where the difficulty is not that the administrative rec-

ord was incomplete but that a denial of benefits based on the record was unreasonable.'

*Id.* at 648 (*quoting Zuckerbrod*, 78 F.3d at 51 n. 4); *see also Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir.2001) (*quoting Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 477 (7th Cir.1998)) ("retroactive reinstatement of benefits is appropriate in ERISA cases ... where 'there [was] no evidence in the record to support a termination or denial of benefits.'") (alterations in original).

For the reasons discussed above, the Court finds that retroactive reinstatement of benefits is the proper remedy in this case. The decision to terminate Medoy's benefits was unreasonable and reached in the absence of evidentiary support. In short, "a plan administrator will not get a second bite at the apple when its first decision was simply contrary to the facts." *Grosz–Salomon*, 237 F.3d at 1163.

Moreover, the fact that this case involves the termination of benefits to which Plaintiff was previously found entitled—as opposed to an initial denial of benefits— also weighs in favor of retroactive reinstatement as a means of restoring the *status quo ante. See, e.g., Hackett v. Xerox Corp. Long–Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir.2003) (noting the distinction between cases involving an "initial denial of benefits" and those "where the plan administrator terminated benefits under defective procedures," and concluding that the *status quo ante* in a case of improper termination is "the continuation of benefits."); *see also Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir.2005) (*citing Quinn* for the proposition that "[a] retroactive award is usually proper when claimant had benefits and lost them because of

arbitrary conduct and/or when no evidence supported [the] denial").

Although Defendants have hinted at an argument in favor of remand insofar as they have insisted that Medoy bore the burden of proving "continuing loss" under the policy, the Court finds this argument unavailing as well. The First Circuit rejected an identical argument in *Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11 (1st Cir.2003):

> [T]he absence of information about Cook's disability status resulted directly from Liberty's arbitrary and capricious termination of her benefits. As a recipient of disability benefits, Cook was under a continuing obligation to adduce proof of her disability pursuant to the long-term disability plan. Once Liberty terminated her benefits, she was no longer obliged to update Liberty on her health status. It would be patently unfair to hold that an ERISA plaintiff has a continuing responsibility to update her former insurance company and the court on her disability during the pendency of her internal appeals and litigation, on the off chance that she might prevail in her lawsuit. Moreover, as the district court notes in its decision, reconstruction of the evidence of disability during the years of litigation could be difficult for a recipient of long-term disability benefits wrongly terminated from a plan.

*Id.* at 24–25; *see also Zurndorfer v. Unum Life Ins. Co. of Am.*, 543 F.Supp.2d 242, 263 (S.D.N.Y.2008) (following *Cook* and awarding retroactive benefits). The foregoing analysis is equally applicable in this case. Thus, the Court need not interpret the policy's provisions regarding proof of loss because, assuming *arguendo* that the burden belonged to Medoy, the Court agrees that such a burden would have ended when Medoy's benefits were terminated.

Finally, the Court finds that retroactive reinstatement of benefits is proper in this case on the independent ground that remand to the claims administrator would be futile. *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008), *citing Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir.1995) (ERISA remand not required where it would be a "useless formality") (internal quotation marks and citations omitted). Defendants have already tipped their hand as to how they would assess Medoy's disability status were the Court to remand this case to the claims administrator. As discussed above, the manner in which Defendants have viewed and characterized the evidence in this case—both that which composed the administrative record and that which was obtained and exchanged during discovery—is far beyond reason. To say that Medoy and her Estate have waited long enough to receive the benefits to which Medoy was entitled would be a dramatic understatement. Plaintiff is entitled to a retroactive reinstatement of benefits, from the date of termination to the date of Medoy's death.

### CONCLUSION

For the reasons set forth above, Plaintiff's Motion for summary judgement is GRANTED and Defendants' Cross–Motion for summary judgment is DENIED. To determine the amount of damages to which Plaintiff is entitled, the Court must first address a number of outstanding issues, including (1) Plaintiff's entitlement to prejudgment interest; (2) the correct amount of any Social Security offset; and (3) any application by Plaintiff for attorneys' fees. Before doing so, the parties are directed to meet and confer in an effort to resolve the foregoing issues, together with any other matters relevant to the calculation of damages. The parties shall file a Joint Status Report, with re-

gard to these and any remaining issues requiring Court intervention, on or before November 7, 2008.

SO ORDERED.